**James H. Kaster*** (MN #53946, WI # 1001474)
kaster@nka.com
**Lucas J. Kaster*** (CA #291102)
lkaster@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Tel: (612) 256-3200

**Anthony S. Petru*** (CA #91399)
petru@hmnlaw.com
**Gavin Barney*** (OR #163382, CA #321880)
barney@hmnlaw.com
HILDEBRAND MCLEOD & NELSON
250 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
Tel: (510) 451-6732

*pro hac vice motions forthcoming

Attorneys for Plaintiff Robert Anthony Zaragoza

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| Robert Anthony Zaragoza | Case No. |
| Plaintiff, | COMPLAINT FOR DAMAGES |
| v. | JURY TRIAL DEMANDED |
| UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | |
| Defendant. | |

Plaintiff Robert Anthony Zaragoza ("Zaragoza") files this Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages resulting from its violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

**PRELIMINARY STATEMENT**

1. Union Pacific enforces a company-wide fitness-for-duty program ("Fitness-for-Duty"), through which the company imposes a blanket policy automatically removing from service employees who disclose or who Union Pacific suspects have certain health conditions. Union Pacific then subjects employees whom it removes from service to a Fitness-for-Duty evaluation.

1

COMPLAINT FOR DAMAGES

Union Pacific applies this policy regardless of whether the employee has been safely performing the essential functions of their job. Union Pacific evaluations do not assess whether an employee is capable of safely or effectively performing their work.

2. Employees responsible for train movement must be certified by the Federal Railroad Administration ("FRA"). The FRA allows railroads to certify employees through one of twelve color-vision examinations, including the *Ishihara* test, which consists of a number of colored plates, each containing a circle of dots appearing randomized in color and size, that form a number or shape clearly visible to those without color-vision deficiency, and invisible, or difficult to see, to those who are color-blind or who have color-vision deficiency.[1] Because employees who have color-vision deficiency may nevertheless be able to distinguish between colors, the FRA permits them to be certified through a color-vision field test ("CVFT"). Even employees who the employer deems to have not met the employer's requirement to pass a CVFT may be certified and the employee allowed to work when there is reason to believe that they can perform their job's essential functions.

3. Because employees responsible for train movement must be certified, Union Pacific's Fitness-for-Duty includes color-vision testing. In or around April of 2016, Union Pacific replaced its CVFT with a new test – the "Light Cannon" test. The old CVFT used existing train signal masts with actual wayside lights and lenses next to the tracks along the Right of Way or within the railyards; whereas the Light Cannon test uses a mobile light device that Union Pacific developed in-house. The Light Cannon test does not replicate what employees see in the field, and yet the majority of those who have been subjected to it fail, despite having successfully passed the old CVFT and performed their jobs without missing a signal for years or even decades.

4. In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's Fitness-for-

---

[1] Color-vision deficiency is the inability to distinguish certain color shades under normal lighting condition; whereas, color blindness is the inability to see colors. Color-vision deficiency is relatively common, *e.g.*, one in twelve men suffer from red-green color vision deficiency. And unlike color blindness, color-vision deficiency does not prevent its sufferers from performing tasks that require them to distinguish between colors.

2
COMPLAINT FOR DAMAGES

Duty policies and practices constituted a pattern and practice of discrimination under the ADA. *See Quinton Harris et. al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). The *Harris*-plaintiff's allegations "clearly encompass vision testing as it is included in the FFD program." *Harris*, 2019 U.S. Dist. LEXIS 16113, at *10-11 (D. Neb. Feb 1, 2019).

5. Zaragoza is a victim of the same discriminatory Fitness-for-Duty policies and practices alleged in *Harris*. Despite each being qualified and safely performing his job without incident, Zaragoza was removed from service for a Fitness-for-Duty evaluation and excluded from work at Union Pacific on the basis of his real or perceived disability, which regards his ability to see color. Zaragoza was a putative class member in *Harris*, and now timely brings this action.

**JURISDICTION AND VENUE**

6. This action arises under the Federal Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* As such, this Court has jurisdiction under 28 U.S.C. § 1331.

7. Venue is proper under 28 § 1391(b)(2), because a substantial part of the events or omissions that give rise to this lawsuit occurred in the Western District of Texas.

8. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the alleged unlawful practices were committed by Union Pacific in the Western District of Texas and because, but for the unlawful practices of Union Pacific, Zaragoza would have worked in the Western District of Texas.

**THE PARTIES**

9. Zaragoza resides in El Paso, Texas. Zaragoza is an individual with a disability, as that term is defined under the ADA, who, at all times material to this lawsuit, was employed by Union Pacific in the State of Texas.

10. Union Pacific is a railroad carrier engaged in interstate commerce.

**PROCEDURAL PREREQUISITES AND TIMELY FILING**

11. On February 19, 2016, counsel for Zaragoza, on behalf of six named plaintiffs and those similarly situated, filed a First Amended Complaint against Union Pacific in the Western District of Washington, alleging disability discrimination in violation of the ADA, along with state law. The case was thereafter transferred to the District of Nebraska. *See Quinton Harris et al. v.*

*Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.).

12. Zaragoza was a putative class member in the *Harris* case and Zaragoza's claim under the ADA were subject to tolling during the pendency of litigating the class-wide claims, pursuant to the Supreme Court's ruling in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

13. The *Harris* court certified the class action in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

14. As a result of *Crown Cork* tolling, Zaragoza had three-hundred (300) days from the date of the Eighth Circuit's order to file a Charge of Discrimination with the Equal Employment Opportunity Commission, "EEOC." Shortly after the Eighth Circuit issued its order reversing class certification, the parties entered into a tolling agreement, extending the time for Zaragoza and other putative class members to file EEOC charges by an additional sixty (60) days.

15. Zaragoza timely filed a Charge of Discrimination with the EEOC on March 8, 2020. The EEOC issued a determination on October 25, 2021, requiring that Zaragoza file a complaint in court by January 23, 2022.

16. Zaragoza timely brings the present action.

## FACTUAL ALLEGATIONS

### *UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES*

17. Union Pacific's Medical Rules outline its Fitness-for-Duty program. The rules require that certain employees, including all employees in Operating Department field positions (such as Transportation, Engineering Services and Mechanical positions), undergo a Fitness-for-Duty evaluation where they report or Union Pacific suspects that they have one of an enumerated list of medical and/or physical conditions.

18. When a Fitness-for-Duty evaluation is triggered, the employee is removed from work without pay while Union Pacific Health and Medical Services completes the evaluation and until Union Pacific informs the employee's supervisor that the employee has been cleared to return to work.

19. Union Pacific Fitness-for-Duty includes color-vision testing. Suspected color-

vision deficiency triggers a Fitness-for-Duty evaluation.

20. FRA regulation requires that all locomotive engineers and conductors undergo periodic certification. Under the fitness requirement, an engineer or conductor must have the ability to recognize and distinguish between the colors of railroad signals, as demonstrated through one of twelve forms of color-vision examination. Where an employee fails one of the listed examinations, FRA regulations state that an engineer or conductor may nonetheless be certified through a CVFT or where there is otherwise reason to believe that they can recognize and distinguish between colors of railroad signals.

21. Union Pacific utilizes the 14-Plate Ishihara test to test for color-vision deficiency for FRA certification. When an employee fails the Ishihara test, Union Pacific subjects the employee, as part of the Fitness-for-Duty process, to a CVFT implemented in or around April 2016, called the Light Cannon test.

22. The Light Cannon Test does not simulate real world conditions and does not assess the employee's ability to recognize and distinguish between colors of railroad signals.

23. As a result of the conduct described above, Union Pacific employees who have never had a problem performing the essential functions of their jobs have been removed from work without pay either for an extended period or indefinitely.

### *PLAINTIFF ROBERT ANTHONY ZARAGOZA*

24. Zaragoza was hired by Union Pacific in Texas in November 2006 and worked as a conductor and brakeman until approximately April 2016, when he was removed from service.

25. As a conductor and brakeman, part of Zaragoza's job entailed reading and interpreting multicolored railroad traffic signal lights on signal masts. Zaragoza safely worked as for Union Pacific for over seven years without misreading a signal.

26. In 2006 Union Pacific administered Zaragoza an Ishihara color vision test as a part of his post-hiring physical examination. Zaragoza passed the Ishihara test and was allowed to work as a conductor.

27. Between 2006 and 2016, Zaragoza took the Ishihara test several more times as part of his FRA conductor certification, and, on at least on occasion, he was adjudged to have failed

the test. After failing the Ishihara test, Zaragoza took and passed a previous Union Pacific CVFT in which he read and relayed a series of signals from a real railroad signal mast to assess his ability to read and interpret signals in the field.

28. On or about April 8, 2016, Zaragoza went to recertify as a conductor. He took and failed the Ishihara Test. On this occasion his test results triggered a Fitness-for-Duty evaluation and Union Pacific removed Zaragoza from work as a conductor.

29. On or about April 16, 2016, as part of the Fitness-for-Duty process, Union Pacific administered the newly adopted Light Cannon test instead of the old CVFT. Union Pacific concluded that Zaragoza failed the Light Cannon test.

30. On or about May 2, 2016, Union Pacific issued Zaragoza permanent work restrictions prohibiting him from working in any position requiring accurate identification of colored railroad wayside signals, including as a conductor. Union Pacific claimed that these restrictions could not be accommodated.

31. On or about May 2, 2016, Zaragoza underwent a 14-plate Ishihara color vision test, administered by Dr. Louis McMahon of Eye World Optometrists. Zaragoza passed the clinical test with normal Ishihara results.

32. On or about May 4, 2016, Zaragoza was approved for a commercial driver's license by Dr. Fernando Aviles, M.D. As a part of the assessment, Dr. Aviles certified that Zaragoza was able to "recognize and distinguish among traffic control signals and devices showing red, green, and amber colors."

33. After being removed from service, Zaragoza appealed his denial of FRA certification under the Light Cannon test and requested that he be allowed to retake a CVFT. On or about August 22, 2016, Union Pacific sent Zaragoza to ophthalmologist Dr. David Schechter, MD, for additional vision testing. On April 17, 2016, Union Pacific sent Dr. Schechter a referral letter concerning Zaragoza, in which it informed Dr. Schechter that Union Pacific was "not asking you to provide an opinion on whether Mr. Zaragoza has a color vision deficiency, or if he has adequate color vison to work as a railroad conductor, since [Union Pacific has] already established this based on his failure of the Color Vision Field Test . . ." Dr. Schechter assessed Zaragoza using

6
COMPLAINT FOR DAMAGES

the Farnsworth D-15 color test and, on or about September 6, 2016, Dr. Schechter informed Union Pacific that Zaragoza's results were "normal."

34. On or about October 11, 2016, Union Pacific denied Zaragoza's appeal and refused to allow him to retake a CVFT.

35. In the time since removing him from service, Union Pacific has persisted in its refusal to allow Zaragoza to return to his job as a conductor/brakeman. At all times, Zaragoza was capable of performing the essential functions of his job, and he remains able to perform them today.

36. After being removed from service, Zaragoza contacted Union Pacific on one or more occasions, including a contacting a Union Pacific return to work manager in Fort Worth, to request that he be allowed to return to work in a different craft or position.

37. Since being held out of service by Union Pacific, Zaragoza has maintained his commercial driver's license in order to work as a truck driver, and, as a result, has undergone and passed periodic color vision testing.

38. On information and belief, Union Pacific had and/or has one or more open jobs in which Zaragoza could be returned to work despite the permanent work restrictions issued by Union Pacific.

39. To the extent that Zaragoza needed reasonable accommodation, Union Pacific failed to provide them, and failed to even engage in an interactive process regarding what accommodations were possible.

40. Zaragoza remains a Union Pacific employee on an indefinite medical leave of absence under the Union Pacific Fitness-for-Duty policy. To the extent that Zaragoza needed reasonable accommodation, Union Pacific has and continues to fail to provide Zaragoza with a reasonable accommodation or to engage in an interactive process regarding what accommodations were possible.

///

## CAUSES OF ACTION

### COUNT I
### *VIOLATION OF THE ADA*
### *DISABILITY DISCRIMINATION – DISPARATE TREATMENT*

41. Plaintiff incorporates the foregoing paragraphs by reference.

42. The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). An individual is regarded as having such an impairment if they are subjected to an action prohibited under the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(C).

43. At all relevant times, Union Pacific regarded Zaragoza as having an impairment and, therefore, Zaragoza was an individual with a disability under the ADA.

44. At all relevant times, Zaragoza had the requisite skill, experience, education, and other job-related requirements of his positions, and was therefore a qualified individual under the ADA.

45. At all relevant times, Zaragoza could perform the essential functions of his position, with or without reasonable accommodation.

46. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

47. Discriminating against a qualified individual on the basis of disability under Section 12112(a) includes, among other things, "using qualification standards, employment tests or other selection criteria that screen out . . . an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

48. Union Pacific discriminated against Zaragoza on the basis of a real or perceived disability in one or more of the following ways:

a. Removing Zaragoza from service and issuing work restrictions on the basis of his disability;

b. Failing to utilize alternate clinical tests to the Ishihara Test to determine whether Zaragoza can effectively read and interpret railroad signals;

c. Using a field test that does not assess whether Zaragoza can effectively read and interpret railroad signals;

d. Failing to otherwise assess whether Zaragoza is capable of reading and interpreting railroad signals; and

e. Using a Fitness-for-Duty evaluation process that screens out qualified individuals with disabilities.

49. Because Union Pacific violated 42 U.S.C. § 12112, Zaragoza has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Zaragoza is also entitled to attorneys' fees and costs incurred in connection with these claims.

50. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Zaragoza's rights and safety. As a result, Zaragoza is entitled to punitive damages.

**COUNT II**
***VIOLATION OF THE ADA***
***DISABILITY DISCRIMINATION – DISPARATE IMPACT***

51. Plaintiff incorporates the foregoing paragraphs by reference.

52. Zaragoza is a qualified individual with a disability within the meaning of the ADA.

53. Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]" 42 U.S.C. § 12112(b)(6).

54. Discriminating against a qualified individual on the basis of disability also includes "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination

on the basis of disability." 42 U.S.C. § 12112(b)(3).

55. Union Pacific discriminated against Zaragoza on the basis of disability in one or more of the following ways:

    a. Union Pacific's Fitness-for-Duty policies, including its use of the Light Cannon test, disproportionately and adversely impact qualified individuals with disabilities;

    b. Union Pacific uses qualification standards that screen out or tend to screen out qualified individuals with disabilities; and

    c. Union Pacific uses a Fitness-for-Duty evaluation process that screens out or tends to screen out qualified individuals with disabilities.

56. Union Pacific cannot show that such qualifications standards are job-related and consistent with business necessity.

57. Because Union Pacific violated 42 U.S.C. § 12112, Zaragoza has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Zaragoza is also entitled to attorneys' fees and costs incurred in connection with these claims.

58. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Zaragoza's rights and safety. As a result, Zaragoza is entitled to punitive damages.

**COUNT III**
***VIOLATION OF THE ADA***
***FAILURE TO ACCOMMODATE***

59. Plaintiff incorporates the foregoing paragraphs by reference.

60. Zaragoza is a qualified individual with a disability within the meaning of the ADA.

61. Discriminating against a qualified individual with a disability includes "not making reasonable accommodations to the known physical or mental limitations of the otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

62. Union Pacific discriminated against Zaragoza by failing to provide Zaragoza with

reasonable accommodation.

63. Because Union Pacific violated 42 U.S.C. § 12112, Zaragoza has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Zaragoza is also entitled to attorneys' fees and costs incurred in connection with these claims.

64. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for Zaragoza's rights and safety. As a result, Zaragoza is entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for judgment against Union Pacific as follows:**

1. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

2. An injunction against Union Pacific and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00;

4. Pre-judgment interest, as provided by law;

5. For Plaintiff's costs, disbursements and attorneys' fees pursuant to law;

6. For an award of punitive damages;

7. For all relief available under the ADA;

8. For such other and further relief available by statute; and

9. For such other and further relief as the Court deems just and equitable.

Date: November 10, 2021        **HILDEBRAND, McLEOD & NELSON LLP**

By: _____
Anthony S. Petru* (CA # 91399)
petru@hmnlaw.com
Gavin S. Barney* (CA # 321880)
barney@hmnlaw.com
350 Frank H. Ogawa Plaza, 4th Floor

11

COMPLAINT FOR DAMAGES

Oakland, California 94612
Telephone: (510) 451-6732
Fax: (510) 465-7023

James H. Kaster* (CA #248949)
kaster@nka.com
Lucas J. Kaster* (CA # 291102)
lkaster@nka.com
**NICHOLS KASTER, PLLP**
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878


* *pro hac vice application forthcoming*

Attorneys for Plaintiff Robert Anthony Zaragoza

---

COMPLAINT FOR DAMAGES