# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

**Robert Anthony Zaragoza**,

     Plaintiff,

v.

**Union Pacific Railroad Co.,**

     Defendant.

**Case No. 3:21-CV-00287-KC**

## PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(6)

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................ 1

FACTS ......................................................................................................................... 1

ARGUMENT ................................................................................................................ 2

    I.   PLAINTIFF'S DISPRATE IMPACT CAUSE OF ACTION WAS TOLLED DURING
        THE *HARRIS* LITIGATION. ............................................................................. 2

        a.   Plaintiff's Disparate Impact Cause of Action is Identical to the Cause of Action
               Alleged in *Harris* and is Subject to *American Pipe* Tolling. ........................................ 2

        b.   The *Harris* Class Certification Process Did Not Functionally Decertify the
               Disparate Impact Cause of Action. ................................................................ 6

   II.   PLAINTIFF REMAINS A UNION PACIFIC EMPLOYEE ON AN INDEFINITE
        LEAVE OF ABSENCE AND HIS FAILURE-TO-ACCOMMODATE CAUSE OF
        ACTION IS THEREFORE TIMELY ................................................................... 9

CONCLUSION .......................................................................................................... 11

# TABLE OF AUTHORITES

Page

**Cases**

*Aguilar v. Ocwen Loan Servicing, LLC,*
    No. 3:17-cv-1165-B, 2018 U.S. Dist. LEXIS 26288 (N.D. Tex. Feb. 20, 2018) ......... 3, 4, 5, 6

*American Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974)................................................................................. *passim*

*Byes v. Telecheck Recovery Services, Inc.,*
    1996 WL 22686 (E.D. La. Jan. 19, 1996) ................................................................ 3

*Carrillo v. Union Pacific R.R. Co.,*
    EP-21-CV-00026-FM, 2021 U.S. Dist. LEXIS 133087 (W.D. Tex., July 16, 2021)........... 7, 8

*Crown, Cork & Seal Co. Inc. v. Parker*,
    462 U.S. 345 (1983)................................................................................. *passim*

*Dillard v. City of Austin*,
    837 F.3d 557 (5th Cir. 2016) ................................................................................. 10

*EEOC v. Chevron Phillips Chem. Co.,*
    570 F.3d 606 (5th Cir. 2009) ................................................................................. 10

*Hall v. Variable Annuity Life Insurance Co.*,
    727 F.3d 372 (5th Cir. 2013) ............................................................................... 7, 8

*Harris. Quinton Harris et. al. v. Union Pacific Railroad Company*,
    Case No. 8:16-cv-381, 2019 U.S. Dist. LEXIS 16113 (D. Neb. Feb. 1, 2019) ............... *passim*

*In re Cmty. Bank N. Va.*,
    622 F.3d 275 (3d Cir. 2010)..................................................................................... 3

*In re Monumental Ins. Co.,*
    365 F.3d 408 (5th Cir. 2004) ................................................................................... 8

*Menominee Indian Tribe v. United States,*
    136 S.Ct. 750 (2016)................................................................................................ 9

*Messer v. Meno*,
    130 F.3d 130 (5th Cir. 1997) ......................................................................... 10, 11

*National Railroad Passenger Corp. (AMTRAK) v. Morgan,*
    536 U.S. 101, 113 (2002)...................................................................................... 11

*Newby v. Enron Corp.,*
    465 F. Supp. 2d 687 (S.D. Tex. 2006) ..................................................... 3, 4, 6, 10

*Norwood v. Raytheon Co.*,
    237 F.R.D. 581 (W.D. Tex. 2006) ............................................................................ 8

*Tosti v. City of Los Angeles*,
    754 F.2d 1485 (9th Cir. 1984) ................................................................................. 3

*Zarecor v. Morgan Keegan & Co.*,
   801 F.3d 882 (8th Cir. 2015) ................................................................................. 9

**Statutes**

Americans with Disabilities Act, 42 U.S.C. § 12101 .................................................. 4

Americans with Disabilities Act, 42 U.S.C. § 12112 ........................................ *passim*

## INTRODUCTION

Union Pacific erroneously seeks to have Plaintiff's timely disparate impact and failure-to-accommodate claims dismissed as time barred, and in doing so, relies on a draconian and overly narrow interpretation of class tolling. Plaintiff brings three counts of disability discrimination against the company, including allegations that Union Pacific, through its Fitness-for-Duty Program and changes to its color vision testing protocols, unlawfully screened out and then failed to accommodate Plaintiff after issuing prohibitive work restrictions based on his alleged medical status. Each of these causes of action was timely filed with the EEOC. First, Plaintiff was a putative class member in *Harris v. Union Pacific*, filed in the District of Nebraska, and here brings claims identical to those alleged on the behalf of the entire class. Plaintiff's Disparate Impact and Disparate Treatment claims were subject to tolling during the pendency of class certification under *American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), and after awaiting the results of the *Harris* class certification process, Plaintiff timely filed a charge of discrimination on both claims. Second, although Plaintiff's failure-to-accommodate cause of action was likely also subject to tolling, Plaintiff does not rely on class action tolling for the timeliness of his third claim. Rather Plaintiff alleges that, as a current employee of Union Pacific on an indefinite medical leave of absence, Union Pacific has failed and continues to fail to either accommodate his alleged condition or to engage in the interactive process. This Court, therefore, should deny Union Pacific's motion in its entirety.

## FACTS

Robert Anthony Zaragoza was employed by Union Pacific as a conductor and brakeman from 2006 until April 2016. Dkt. 1 at ¶ 24. In 2016, after Union Pacific determined that he had failed an Ishihara color vision test as part of his conductor certification process, Plaintiff was removed from service and subjected to Union Pacific's Fitness-for-Duty evaluation. *Id.* at ¶¶ 26-28. As a part of that process, Union Pacific assessed Plaintiff's vision with its newly adopted Light Cannon test. *Id.* at ¶ 29. After determining that Plaintiff failed the Light Cannon test, Union Pacific issued Plaintiff permanent work restrictions prohibiting him from working in any position

requiring accurate identification of colored railroad wayside signals. *Id.* at ¶ 30. Union Pacific did not accommodate these restrictions. *Id.* To date, Plaintiff remains an employee of Union Pacific on an indefinite medical leave of absence. *Id.* at ¶ 40.

In 2016, several Union Pacific employees who had also been removed from service following Union Pacific's Fitness-for-Duty evaluation process commenced a class action disability discrimination lawsuit against the railroad in *Harris v. Union Pacific*. *Id.* at ¶ 4. Plaintiff was a member of the putative class. *Id.* at ¶ 5. After the *Harris* class was ultimately decertified in 2020, Plaintiff filed an individual charge of discrimination with the Equal Employment Opportunity Commission on March 8, 2020, and subsequently filed this lawsuit on November 23, 2021. *Id.* at ¶¶ 13-15.

## ARGUMENT

### I.    PLAINTIFF'S DISPRATE IMPACT CAUSE OF ACTION WAS TOLLED DURING THE *HARRIS* LITIGATION.

#### a.    Plaintiff's Disparate Impact Cause of Action is Identical to the Cause of Action Alleged in *Harris* and is Subject to *American Pipe* Tolling.

Under *American Pipe* the timely filing of a class action tolls the running of the applicable statute of limitations for putative class members' claims until a decision is reached whether to certify the class. *American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 539 (1974); *Crown, Cork & Seal Co. Inc. v. Parker*, 462 U.S. 345, 350 (1983) ("While *American Pipe* concerned only intervenors, we conclude that the holding of that case is not to be read so narrowly. This filing of a class action tolls the statute of limitations to all asserted members of the class, not just intervenors.").

The basis for the *American Pipe* rule is that the class action filing provides a defendant notice of the "substantive claims being brought against them," along with "the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe,* 414 U.S. at 555. In other words, class action tolling is consistent with the purposes behind statutes of limitation, which prevent surprise assertions of belated claims, by which time "evidence has been

lost, memories have faded, and witnesses have disappeared." *Id.* at 554. The rule also promotes the interests of litigative efficiency and judicial economy at the heart of class action litigation. *Id.* at 555-56. Tolling during the pendency of a class certification, prevents the need for a plaintiff to file redundant independent suits while awaiting a decision concerning certification in order to avoid their claims becoming time barred during the pendency of the class action. *Id.* at 553-54; *see also Aguilar v. Ocwen Loan Servicing, LLC,* No. 3:17-cv-1165-B, 2018 U.S. Dist. LEXIS 26288, at *10 (N.D. Tex. Feb. 20, 2018) ("[I]f the statute of limitations for a putative class member's claim continued to run after the filing of a class action, putative class members could not count on class actions to protect their rights . . . Putative members would need to intervene to protect their claims. The result would be a needless multiplicity of protective actions, which was what Rule 23 was designed to prevent.") (*Internal citating omitted*).  Because of the notice provided by the filing of a class action, a defendant can make efforts to preserve evidence, and "the imposition of a time bar would not [] promote the purposes of the statute of limitations" making tolling "consistent with both the procedures of Rule 23 and with the proper function of the limitations statute." *American Pipe,* 414 U.S. at 555.

Courts have applied two distinct rules concerning the scope of class action tolling under *American Pipe* and *Crown, Cork,* and the Fifth Circuit Court of Appeals has yet to decide the issue. Given that notice is the touchstone for tolling, many courts – including courts in the Fifth Circuit – have held that the proper analysis for class action tolling is whether the claims in the class action share a common factual and legal nexus with the claims in the subsequent individual action. *See Newby v. Enron Corp.,* (In re Enron Corp. Secs), 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006) (similar claims not included in class action tolling "as long as they share a common factual basis and legal nexus"); *Byes v. Telecheck Recovery Services, Inc.,* 1996 WL 22686 *2 (E.D. La. Jan. 19, 1996) (allowing new claims to be tolled based on similar factual allegations); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1984) (tolling applied to a different claim because the class suit involved the same allegations and "[t]he City had ample notice of the nature of *Tosti's* discrimination claims."); *In re Cmty. Bank N. Va.*, 622 F.3d 275, 300 (3d Cir. 2010), as amended,

(Oct. 20, 2010) (noting that some "[c]ourts have reasoned that, where claims brought in a subsequent suit share a common factual and legal nexus with those brought in the prior class action, there is no persuasive reason for refusing to apply class action tolling, as the defendant will already have received adequate notice of the substantive nature of the claims against it and likely would rely on the same evidence and witnesses in mounting a defense"). Under this rule, Plaintiff's claims do not need to be identical to those asserted in the *Harris* action. *See e.g. Newby*, 465 F. Supp. 2d at 718 ("The majority of court have [] concluded that subsequent individual claims, filed after denial of class certification [] need not be identical to the original class action's for tolling to apply[.]").

Other courts have applied – and Union Pacific here advocates – a much narrower rule extending *American Pipe* tolling only where there is identity of claims between those asserted in the class action and those asserted in the subsequent case. *See Aguilar v. Ocwen Loan Servicing, LLC,* No. 3:17-cv-1165-B, 2018 U.S. Dist LEXIS 26288, at *17 (N.D. Tex. Feb. 20, 2018). Under this narrow interpretation of *American Pipe*, a court considers whether the class action giving rise to tolling raised the same causes of action so that the defendant is provided sufficient notice. *Id.* at 11. However, under either rule, the notice provided to the defendant by the class action filings is the basis for tolling and the primary consideration before the court. *See Id.* ("The class allegations give the defendant the essential information necessary to determine both the subject matter and size of prospective litigation"); *Newby*, 465 F. Supp. 2d at 718-19.

Here, the Court need not decide between either interpretation of *American Pipe* and *Crown, Cork* to find that Plaintiff's Disparate Impact claim was tolled, because Plaintiff here brings the exact same claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), as those alleged by the named and unnamed plaintiffs in *Harris*. Indeed, Plaintiff's Disparate Impact cause of action is tolled under either rule. In his complaint, Plaintiff asserts that Union Pacific unlawfully screened him due to this alleged disability in violation of 42 U.S.C. § 12112(a) and (b)(6) by, (a) imposing "fitness for duty policies, including its use of the Light Cannon test, [that] disproportionately and adversely impact qualified individuals with disabilities; (b) . . .

us[ing] qualification standards that screen out or tend to screen out qualified individuals with disabilities; and (c) . . . us[ing] a Fitness-for-Duty evaluation process that screens out or tends to screen out qualified individuals with disabilities" Dkt. 1 at ¶¶ 51-58. These are functionally identical to the claims that were previously asserted in the *Harris* class action on a class-wide basis, both as disparate treatment and disparate impact. (*Harris* First Amended Complaint, Dkt. 13-1, Ex. C at ¶¶ 136-153 (citing (b)(6) in disparate treatment and disparate impact claims).) Namely, both complaints allege that Union Pacific engaged in disability discrimination through its Fitness-for-Duty program, under which it unlawfully removed individuals with real or perceived disabilities from service and issued them permanent and unnecessary work restrictions. (*Compare* Dkt 1 ¶¶ 17-23, *with* Dkt 13-1, Ex. C at 4-8 (¶¶ 1-19).) Although Plaintiff's claims are specific to Union Pacific's rules and testing procedures for color-vision deficiency, these rules and tests are part of the same Fitness-for-Duty policies identified in *Harris. Quinton Harris et. al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381, 2019 U.S. Dist. LEXIS 16113, at *10-11 (D. Neb. Feb. 1, 2019). (Finding that the *Harris*-plaintiffs' allegations "clearly encompass vision testing as it is included in the FFD program.")

As here, the *Harris* Complaint alleged that the application of Union Pacific's Fitness-for-Duty policies "disproportionately – and adversely – impact qualified individuals with disabilities" and use "qualification standards that screen out and tend to screen out individuals with disabilities" in violation of 42 U.S.C. § 12112(b)(6). Dkt. 13-1, Ex. C at ¶¶ 145-153. These allegations were raised on the behalf of both the named and unnamed plaintiffs. *Id. See Aguilar* No. 3:17-cv-1165-B, 2018 U.S. Dist LEXIS 26288, at *17.

Because the same disparate impact claims were alleged in both the class and subsequent litigation, Union Pacific cannot – and does not – suggest that it lacked notice of the subject matter of prospective litigation during the pendency of the *Harris* class action. *See American Pipe,* 414 U.S. at 555. Indeed, Plaintiff's identical Section 12112(b)(6) claim not only arises out of the same facts and law as the claims alleged in the *Harris* class complaint, but qualifies for tolling under even the narrowest interpretation of *American Pipe.* This identity of claims fulfills the exact

5

interests Union Pacific itself identifies in *Aguilar* – namely that because class action is supposed to put the defendant on notice of claims that may be brought by putative class members, "*American Pipe* tolling cannot extend to causes of action **not raised in the class action** because the class action will not have provided the defendant notice of claims other than those asserted in the class action." *Aguilar,* No. 3:17-cv-1165-B, 2018 U.S. Dist LEXIS 26288, at *17. Here, there is no risk of surprise as the disparate impact cause of action was, indeed, "raised in the class action" and Plaintiff does not assert allegations other than those "asserted in the class action." *See Id.*

Under *American Pipe* and *Crown, Cork* tolling, therefore, Plaintiff's Disparate Impact claim is timely. Plaintiff alleges that Union Pacific discriminated against him by subjecting him to its Fitness-for-Duty process in April 2016, during the pendency of the *Harris* class case. After the reversal of the *Harris* class, Plaintiff timely filed a charge with the EEOC, on March 8, 2020, within 300 days of the class reversal. He then filed this action within 90 days of receiving a right-to-sue notification on October 25, 2021. Dkt 1. As such, Defendant's motion should be denied as to Plaintiff's Disparate Impact claim.

### b. The *Harris* Class Certification Process Did Not Functionally Decertify the Disparate Impact Cause of Action.

Despite Plaintiff's disparate impact cause of action being identical to that alleged on a class-wide basis in *Harris*, Union Pacific argues that tolling for the claim had been suspended in 2018 after the *Harris* plaintiffs sought to narrow the issue before the District of Nebraska and moved to certify the class on disparate treatment alone. The suggestion that this had the effect of removing the claim from tolling flies in the face of the purpose behind class action tolling and is unsupported by Fifth Circuit precedent.

As discussed above, the Fifth Circuit extends *American Pipe* tolling to subsequent claims by putative class members where the allegations contained in the class complaint provide the defendant with essential information necessary to determine the size and subject matter of prospective litigation. *See Newby,* 465 F. Supp. 2d at 718-19; *Aguilar,* No. 3:17-cv-1165-B, 2018 U.S. Dist LEXIS 26288, at *11. Fifth Circuit courts have looked to whether the claims *raised* in

the class action provide the necessary notice, not whether the subsequent claims were included in the final class certification. *Aguilar,* No. 3:17-cv-1165-B, U.S. Dist LEXIS 26288, at *17. This makes sense, given that notice is the touchstone for tolling. Here, under even the narrowest of rules, the *Harris* plaintiffs' disparate impact cause of action gave Union Pacific notice of the subject matter of Plaintiff's subsequent and identical claim. With this notice, Union Pacific had a full opportunity to avoid the risks of lost evidence, faded memories, and vanished witnesses. *American Pipe*, 414 U.S. at 554-555.

Assessing class action tolling based on the claims *raised* by the class, rather than those that the plaintiffs ultimately move to certify, also promotes the core policy interests of Rule 23 litigation; namely litigative efficiency and judicial economy. Although Union Pacific suggests that allowing the claim to continue to be tolled would encourage spin-off litigation, in reality it is the severing of tolling that would encourage, or even require, spin-off or parallel claims. Under the rule articulated by Union Pacific, in order for Plaintiff – or any other similarly situated *Harris* class member - to pursue his claim for disparate impact while the question of class certification remained unsettled, he would have been required to withdraw from the class and litigate his claims independently.

To support its exceedingly narrow interpretation of class action tolling, Union Pacific relies primarily on the recent decision in a related suit: *Carrillo v. Union Pacific R.R. Co.,* EP-21-CV-00026-FM, 2021 U.S. Dist. LEXIS 133087 (W.D. Tex., July 16, 2021). There, the court noted that certain events, including denial of certification or class decertification have the effect of triggering an end to tolling under *American Pipe*. *Id.* at * 11. In doing so, the court equated the decision to certify only on certain causes of action – or as the court puts it, to "voluntarily abandon" the disparate impact claim – with the functional effect of decertification. *Id.* at 12-13. However, in coming to this conclusion, the *Carrillo* court largely ignored the fact that the *Harris* class complaint had provided Union Pacific with ample notice of the class members' disparate impact causes of action, and instead relied almost exclusively on the Fifth Circuit's ruling in *Hall v. Variable Annuity Life Insurance Co.*, 727 F.3d 372 (5th Cir. 2013). *Hall* concerned a class action

lawsuit alleging securities fraud in which the class plaintiffs failed to disclose any expert or fact witnesses prior to the disclosure deadline. *Id.* at 374. The court ultimately granted the defendant's motion to strike after the class plaintiffs eventually filed witness lists, and, after determining that the class plaintiffs would be unable to prove class wide damages, the court vacated its previous grant of class certification. *Id.* When the plaintiffs in *Hall* filed a subsequent case over five years later, the court refused to find that the applicable statute of repose had continued to be tolled following the vacatur of certification in the previous suit. *Id.* at 375. The court ultimately held that vacating an order of class certification is equivalent to denying certification or decertifying a class. *Id.*

The *Carrillo* court's reliance on *Hall* was unfounded and, as such, its order was ultimately wrongly decided. While in *Hall* the decision to vacate class certification had the effect of entirely resolving the class action, here, the question of class certification remained an open one until the Eighth Circuit ultimately decertified the *Harris* class in 2020. As such, the predecessor court's decision in *Hall* to vacate certification is readily distinguishable from the *Harris* plaintiffs' certification of the disparate treatment cause of action. Crucially, Plaintiff did not cease being a class member when the proposed *Harris* class definition was narrowed. As the *Hall* court explained, "[o]nce the district court denies certification or decertifies a class, the putative class members ha[ve] no reason to assume that their rights are being protected." *Id.* at 376 (*internal citations omitted*). Here, the *Harris* class action as a whole was still pending, and plaintiff had no reason to assume that his rights were no longer protected as to only part of his claims.

In addition to the wrongly decided *Carrillo,* the other caselaw that Union Pacific relies on in support of its exceedingly narrow construction of class action tolling is equally inapplicable to the facts at issue here. For example, neither *Norwood v. Raytheon Co,* nor *In re Monumental Life Ins. Co.* concern questions of class action tolling at all.[1] Meanwhile, the Court in *Menominee Indian*

---

[1] *Norwood v. Raytheon Co.,* 237 F.R.D. 581, 586 (W.D. Tex. 2006) (denying certification of plaintiffs' proposed class pursuant to Rule 23(c)(4) on the basis that the court could not conclude that common issues predominate); *In re Monumental Ins. Co.,* 365 F.3d 408, 413 (5th Cir. 2004) (reversing the district court's denial of class certification).

*Tribe v. United States* denied the plaintiff's assertion of class action tolling, not because the plaintiffs in the subsequent case alleged claims that had been removed when the class was narrowed, but because the plaintiff failed in a separate mandatory administrative process. 136 S.Ct. 750, 754-55 (2016). There, the plaintiff Native American tribe was required to present its claim to IHS before it would be eligible to participate in a class action under the Indian Self-Determination and Education Assistance Act; and in failing to do so, the plaintiff was ineligible for class-action tolling during the class action's pendency. *Id.* Similarly, in *Zarecor v. Morgan Keegan & Co.*, the Eighth Circuit declined to extend class tolling to the plaintiffs' subsequent claims, not because the class action was narrowed, but because plaintiffs alleged claims that were distinct from those originally alleged in the class action. 801 F.3d 882, 887-88 (8th Cir. 2015). Indeed, the plaintiffs in *Zarecor* opted out of the class action. *Id.* at 885.

Contrary to Union Pacific's assertion, none of its cited cases hold that the narrowing of a class definition severs tolling for individuals who remain putative members of the class and who continue to have factually and legally similar claims that are otherwise tolled pursuant to *American Pipe* and *Crown, Cork*. Because the *Harris* class action gave Union Pacific ample notice concerning the size and subject matter of prospective future litigation, this Court should not limit tolling on Plaintiff's disparate impact claim on the basis of the *Harris* certification.

## II.   PLAINTIFF REMAINS A UNION PACIFIC EMPLOYEE ON AN INDEFINITE LEAVE OF ABSENCE AND HIS FAILURE-TO-ACCOMMODATE CAUSE OF ACTION IS THEREFORE TIMELY.

In addition to disparate treatment and disparate impact claims that are identical to those alleged in the *Harris* class action, Plaintiff also alleges that, to the extent he needed a reasonable accommodation, Union Pacific failed to accommodate him or even to engage in the interactive process. Contrary to Union Pacific's arguments, Plaintiff's claim under 42 U.S.C. § 12112(b)(5)(A) is timely even if it is not subject to tolling pursuant to *American Pipe.*[2]

---

[2] Plaintiff does not concede that his failure-to-accommodate cause of action is not subject to class action tolling. Plaintiff's claim pursuant to 42 U.S.C. § 12112(b)(5)(A) shares a common factual and legal nexus with the claims

Under 42 U.S.C. § 12112(b)(5)(A), an employer has an affirmative obligation to engage in the interactive process with a qualified employee with a disability in order to identify a reasonable accommodation that would allow the employee to continue working. *EEOC v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 621-22 (5th Cir. 2009) (Finding that failure to engage in the interactive process in good faith is a violation of the ADA, including where the employer discharges the employee instead of considering an accommodation). The duty to accommodate is a continuing one and does not end with the "first attempt at accommodation." *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016). Rather, the duty "continues when the employee asks for a different accommodation or *where the employer is aware that the accommodation is failing or further accommodation is needed*." *Id.* (emphasis added) (internal citations omitted).

Plaintiff alleged both in his EEOC charge, and in his Complaint, that Union Pacific not only failed to accommodate him at the time that it first issued him permanent work restrictions, but that it has continued to fail in its duty to accommodate Plaintiff since that time. Dkt. 13-1, Ex. A, p. 1; Dkt. 1 at ¶ 39-40. This is because, although Plaintiff has been held out of service since 2016, he continues to be a Union Pacific employee on an indefinite medical leave of absence. Because Union Pacific issued Plaintiff his permanent work restrictions as a part of its Fitness-for-Duty process, it has been aware of Plaintiff's need for accommodation since holding plaintiff out. Each day that Union Pacific fails to engage Plaintiff – a current employee – in the interactive process is a new, discrete violation of the ADA.

Union Pacific attempts to confuse Plaintiff's "continuing action" allegation by framing it under the so-called "continuing violation doctrine." The continuing violation doctrine "relieves a plaintiff of establishing that all of the complained of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the statute of limitations period." *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997). In *National Railroad*

---

alleged in *Harris* – i.e. that Union Pacific subjected qualified individuals with disabilities to its Fitness-for-Duty process and issued unnecessary permanent work restrictions, which Union Pacific then refused to accommodate. Dkt. 13-1, Ex. C at p. 2. Plaintiff's subsequent claims is tolled under Fifth Circuit caselaw. *Newby,* 465 F. Supp. 2d at 718.

*Passenger Corp. (AMTRAK) v. Morgan,* the Supreme Court applied the doctrine to hostile work environment claims, but also limited its application as to discrete discriminatory acts. *National Railroad Passenger Corp. (AMTRAK) v. Morgan,* 536 U.S. 101, 113 (2002)*.* The Court there clarified that each discrete violation constituted a separate actionable unlawful employment practice, and therefore, must have each individually occurred within the statute of limitations. *Id.* at 114. Crucially, however, the Court's decision in *Morgan* is backwards facing, and applies only to attempts to revive discrete violations that occurred outside the statute of limitations period. The conduct Plaintiff alleges constitutes a series of discrete violations of the ADA that continued into the actionable period and through to when Plaintiff filed his charge with the EEOC, and is therefore consistent with the *Morgan* ruling. Although Union Pacific's series of failures to engage in the interactive process extends beyond the statute of limitations, the instances that have occurred within the period are all timely. As such, whether class action tolling applies to Plaintiff's claim that Union Pacific violated, and continues to violate, 42 U.S.C. § 12112(b)(5)(A), the Court should deny Union Pacific's motion to dismiss Plaintiff's third cause of action.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.

Date: <u>January 12, 2022</u>                **HILDEBRAND, McLEOD & NELSON LLP**

By: <u>*/s/ Gavin S. Barney*</u>
   Anthony S. Petru* (CA # 91399)
   petru@hmnlaw.com
   Gavin S. Barney* (CA # 321880)
   barney@hmnlaw.com
   350 Frank H. Ogawa Plaza, 4th Floor
   Oakland, California 94612
   Telephone: (510) 451-6732
   Fax: (510) 465-7023

   James H. Kaster** (CA #248949)
   kaster@nka.com
   Lucas J. Kaster** (CA # 291102)
   lkaster@nka.com
   **NICHOLS KASTER, PLLP**
   80 South Eighth Street
   4600 IDS Center

11

Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878


*admitted pro hac vice*
*** pro hac vice application forthcoming*

Attorneys for Plaintiff Robert Anthony Zaragoza