IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ROBERT ANTHONY ZARAGOZA,** § <br> § <br> **Plaintiff,** § <br> § <br> v. § <br> § <br> **UNION PACIFIC RAILROAD** § <br> **COMPANY,** § <br> § <br> **Defendant.** § | **CAUSE NO. EP-21-CV-287-KC** |

## ORDER

On this day, the Court considered Defendant Union Pacific Railroad Company's ("Union Pacific") Motion for Summary Judgment ("Motion"), ECF No. 43. For the reasons set forth below, the Motion is **GRANTED**.

### I.    BACKGROUND

The following facts are undisputed unless otherwise noted.

#### A.    Plaintiff's Employment Dispute

This case involves the implementation of Union Pacific's internal Fitness-for-Duty ("FFD") policies, and how those policies affected employees—like Zaragoza—with color-vision deficiency. *See* Compl. ¶¶ 1–5, ECF No. 1. The Federal Railroad Administration ("FRA") requires companies like Union Pacific to periodically assess the color vision of certain employees. *See* 49 C.F.R. § 242.117(b), (h)(3); Def.'s Proposed Undisputed Facts ("PUF") ¶¶ 10–11, ECF No. 43-1. FRA regulations provide for two levels of color-vision testing. *See* 49 C.F.R. pt. 242 app. D. First, a railroad employee must take one of several "acceptable" tests listed by the FRA to "determin[e] whether [the employee] has the ability to recognize and distinguish among the colors used as signals in the railroad industry." *Id.* app. D(2). Then, if the

employee fails the initial test, they "may be further evaluated as determined by the railroad's medical examiner," using, among other things, "field testing." *Id.* app. D(4).

Zaragoza has color-vision deficiency, which he disclosed to Union Pacific during his preemployment medical evaluation. PUF ¶ 49. During his FRA examinations in 2010 and 2013, Zaragoza took and failed the Ishihara Test, Union Pacific's initial color-vision test. *See* PUF ¶¶ 52, 56; Pl.'s Separate Statement Facts ("PUF Resp.") ¶ 46, ECF No. 49-1. But in both examinations, Zaragoza took and passed Union Pacific's follow-up test. PUF ¶¶ 55–56. Zaragoza was cleared for work after both examinations because he passed these follow-ups. PUF Resp. ¶ 46.

Then, in 2016, Union Pacific began using a new follow-up examination: the "Light Cannon" test. PUF ¶ 35. In the same year, Zaragoza underwent vision screening for FRA recertification. PUF ¶ 57. As he did in 2010 and 2013, Zaragoza failed the initial Ishihara test. PUF ¶ 57. But during this examination, he also failed the new Light Cannon follow-up. PUF ¶ 58. Based on these test results, Union Pacific suspended Zaragoza's employment. PUF ¶ 66; PUF Resp. ¶ 53.

Zaragoza alleges that despite his test results, he remains "capable of performing the essential functions of his job." Compl. ¶ 35. He further alleges that Union Pacific's Light Cannon test "does not simulate real world conditions" and has resulted in many employees "who have never had a problem performing the essential functions of their jobs [being] removed from work." *Id.* ¶¶ 22–23. Based on these allegations, Zaragoza raises disparate treatment and

disparate impact claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., challenging Union Pacific's use of the Light Cannon test.[1]  Compl. ¶¶ 41–58.

### B.   The *Harris* Class Action

Zaragoza's claims put him within the scope of an early iteration of the putative class in *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1033 (8th Cir. 2020).  *See* PUF ¶ 69.  In the suit's operative pleading, the plaintiffs described the proposed class as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

Def. Ex. II ("*Harris* Compl."), at ¶ 116, ECF No. 43-5.

However, in their motion for class certification, the *Harris* plaintiffs defined the proposed class more narrowly, as "[a]ll individuals who have been or will be subject to a fitness-for-duty examination *as a result of a reportable health event* at any time from September 18, 2014 until the final resolution of this action."  Def. Ex. JJ ("*Harris* Class Mot."), at 1, ECF No. 43-5 (emphasis added); *see also* Def. Ex. KK ("*Harris* Class Br."), at 22, ECF No. 43-5.  A "reportable health event," in turn, was defined by Union Pacific's medical rules as "any new diagnosis, recent event[], and/or change in" certain conditions, including color vision.  PUF ¶¶ 74–76 (alteration in original); *Harris* Compl. 43.  The *Harris* plaintiffs acknowledged that the class definition in their certification motion had "been narrowed from the Amended Complaint."  *Harris* Class Br. 22 n.5.

On February 5, 2019, the district court certified the proposed class.  *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 628 (D. Neb. 2019), *rev'd*, 953 F.3d at 1039.  The district court used

---

[1] Zaragoza also brought a failure to accommodate claim.  Compl. ¶¶ 59–64.  The Court dismissed this claim on timeliness grounds.  *Zaragoza v. Union Pac. R.R. Co.*, --- F. Supp. 3d ----, 2022 WL 2145556, at *6 (W.D. Tex. June 10, 2022).

3

the narrowed class definition provided in the plaintiffs' certification motion. *Compare id.*, *with Harris* Class Mot. 1. The court also ordered that notice be sent to "7,723 current and former [Union Pacific] employees" included on a potential class list created by Union Pacific. *Harris*, 329 F.R.D. at 627. That list included Zaragoza. PUF Resp. ¶ 71.

On March 8, 2020, Zaragoza filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). PUF ¶ 79. A few weeks later, the Eighth Circuit decertified the class approved by the district court in *Harris*. PUF ¶ 80; *Harris*, 953 F.3d at 1039. On November 23, 2021, Zaragoza filed this lawsuit. *See* Compl.

## II.   DISCUSSION

### A.   Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,

477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996).  To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

The court resolves factual controversies in favor of the nonmoving party, but factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence.  *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478–79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–52.

### B.  Analysis

To file suit under the ADA, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC.  *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378–79 (5th Cir. 2019) (per curiam) (collecting cases).  A plaintiff must file this charge

"within three hundred days after the alleged unlawful employment practice occurred."[2] *Id.* at 379 (citing 42 U.S.C. § 2000e-5(e)(1)). But this limitations period "is subject to equitable doctrines such as tolling or estoppel." *Id.* at 380 (first citing *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 880 (5th Cir. 2003); and then citing 29 C.F.R. § 1614.604(c)).

As relevant here, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). The Supreme Court reasoned that the class action would "notif[y] the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment," thereby satisfying the same purposes as a statute of limitations. *See id.* at 554–55.

But a class action only provides a defendant with notice of the substantive claims and identity of potential plaintiffs "if the plaintiff's desired class was, in fact, certified." *Smith v. Pennington*, 352 F.3d 884, 893 (4th Cir. 2003) (citing *Davis v. Bethlehem Steel Corp.*, 769 F.2d 210, 212 (4th Cir. 1985)); *see also Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 376 (5th Cir. 2013) ("[A denial of class certification] serves as notice to the once-putative class members that they are 'no longer parties to the suit and . . . [a]re obliged to file individual suits or intervene.'" (quoting *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 520 (5th Cir. 2008)) (second alteration in *Hall*)). Therefore, once a court adopts a class definition that unambiguously

---

[2] The *Harris* plaintiffs and Union Pacific agreed to extend this deadline by sixty days after the Eighth Circuit decertified the *Harris* class. *See* Pl. Ex. 57, at 2, ECF No. 49-15. But this agreement was limited to the members of the class certified by the district court in *Harris*. *See id.* at 1. Because Zaragoza was not a member of the certified class—as the Court concludes below—this agreement did not affect his rights.

excludes certain plaintiffs, their individual limitations periods begin to run. *See Smith*, 352 F.3d at 884; *Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 253–54 (10th Cir. 1994).[3]

The timeliness of this action thus turns on whether the class definition certified by the *Harris* district court included Zaragoza. If so, then his limitations period was tolled until the Eighth Circuit decertified the class, and his EEOC charge was timely. But if the class definition excluded Zaragoza, then his limitations period began running when the district court certified the narrowed class, and his EEOC charge was untimely.[4]

The *Harris* class only included plaintiffs who were subject to an FFD examination "as a result of a reportable health event," 329 F.R.D. at 628, and a reportable health event requires some "new diagnosis, recent event[], and/or change" in a health condition, PUF ¶¶ 74–76 (alteration in original). Zaragoza, however, did not experience any change in his vision that prompted a new FFD examination. Rather, he underwent an FFD examination in 2016 as part of his periodic FRA recertification process. *See* PUF Resp. ¶ 47. It follows that Zaragoza's FFD examination was not conducted "as a result of a reportable health event," excluding him from the plain terms of the certified class in *Harris*. *See* 329 F.R.D. at 628.

---

[3] Both *Smith* and *Sawtell* suggest that an excluded plaintiff's limitations period begins to run once the class representatives move to certify a class that excludes them, rather than when the district court certifies the narrowed class. *See Smith*, 352 F.3d at 894; *Sawtell*, 22 F.3d at 253. This Court previously noted that the date of class certification seems to be the better date from which to calculate the limitations period. *See Zaragoza*, 2022 WL 2145556, at *3 n.2. But here, the analysis remains the same regardless of the date used. Zaragoza filed his EEOC charge on March 8, 2020, more than 300 days after the district court certified the *Harris* class on February 5, 2019, let alone when the *Harris* plaintiffs moved to certify the narrowed class on August 17, 2018.

[4] The Court previously considered the issue of timeliness and class-action tolling when it addressed Union Pacific's motion to dismiss. *See Zaragoza*, 2022 WL 2145556, at *2–5. There, the Court held that the similarity between Zaragoza's disparate treatment and disparate impact claims allowed both to proceed, even though the *Harris* plaintiffs abandoned their disparate impact claim before seeking class certification. *Id.* at *4–5. But the Court did not address the question presented in the current motion: whether Zaragoza remained a member of the *Harris* class after the district court's class certification order. Neither party argues that the Court's previous order settles the issues presented by Union Pacific's summary judgment Motion, or that Union Pacific has waived or forfeited this argument.

Zaragoza raises three arguments for why his claims are not time barred.  First, he argues that the class certification motion in *Harris* did not actually narrow the proposed class.  Resp. Def.'s Mot. Summ. J. ("Resp.") 9–11 & n.5, ECF No. 49.  Any references to narrowing in the motion, Zaragoza contends, merely referred to claims that the plaintiffs abandoned at that stage.  *See id.* at 9 n.5.

Zaragoza's reading is facially implausible.  The motion expressly states that "the *class definition* has been narrowed from the Amended Complaint."  *Harris* Class Br. 22 n.5 (emphasis added).  And reading the second, certified *Harris* class definition in the same way as the first, proposed *Harris* class definition would render all the changes between the two superfluous.  *Cf. United States v. Palomares*, 52 F.4th 640, 644–45 (5th Cir. 2022) (discussing how "courts prefer interpretations that give independent [ ] effect to every word and clause in a statute") (collecting cases).  The plain language of the class certification motion and order limited the class to those who underwent testing "as a result of a reportable health event."  *Harris*, 329 F.R.D. at 628; *Harris* Class Mot. 1.  Because Zaragoza offers only implausible, unsubstantiated assertions to the contrary, his argument is unavailing.  *See Little*, 37 F.3d at 1075.

Second, Zaragoza argues that even if the *Harris* class definition was narrowed at certification, the new definition still included him.  *See* Resp. 6–9, 11–14.  He argues that Union Pacific employs a broader definition of "reportable health event" in practice, which does not require a change in health status.  *See* Resp. 11–14.  In support of this argument, Zaragoza cites statements from a Union Pacific employee saying that reportable health events "may be identified during a supervisor-initiated request for FFD evaluation," or "during required regulatory examination of an employee, such as an FRA examination."  Pl. Ex. 54, at ¶¶ 18–19, ECF No. 49-14.

But even if these statements suggest a broader definition of the *Harris* class, they still do not suggest a definition that includes Zaragoza. Nothing in the record shows that Zaragoza was referred for an FFD evaluation by a supervisor. Nor is there any evidence that Zaragoza failed his FRA recertification examination because of a change in his vision. Indeed, Zaragoza's 2016 recertification results essentially resemble his 2010 and 2013 results: he failed the initial Ishihara test, then took Union Pacific's follow-up test. *See* PUF ¶¶ 52–57. The only noticeable difference between Zaragoza's 2016 results and his previous results is that the 2016 examination involved a Light Cannon test (which Zaragoza failed), while the previous examinations involved a different follow-up test (which Zaragoza passed). *See* PUF Resp. ¶¶ 46–48. These results suggest a change in testing methods, rather than a change in Zaragoza's vision.

Moreover, even if there were evidence that Zaragoza's FFD had *uncovered* a reportable health event, it does not follow that the FFD occurred *as a result of* a reportable health event. Therefore, Zaragoza was not a member of the *Harris* class even assuming his failed Light Cannon test qualified as a reportable health event on its own. *See* Resp. 12. Because the certified class only included individuals who were "subject to [an FFD] examination as a result of a reportable health event," *Harris*, 329 F.R.D. at 628, the perception of those reportable health events must have necessarily preceded the FFD examinations. No known or perceived change in Zaragoza's health prompted his FFD examination, so even if the Light Cannon test results revealed a change in Zaragoza's color vision, he would still be excluded from the certified class in *Harris*.[5]

---

[5] For similar reasons, Zaragoza cannot show that the *Harris* class included him by showing that it included many "color vision plaintiffs." *See, e.g.*, Resp. 11. The *Harris* class certainly may have included plaintiffs who had their employment suspended based on their color-vision deficiency. But those plaintiffs would still need to show that they were subject to an FFD examination as a result of a reportable health event. Thus, the *Harris* class may have included some color-vision plaintiffs and

Finally, Zaragoza argues that two references made by the district judge within the class certification order itself show that the narrowed *Harris* class included plaintiffs like Zaragoza. *See* Resp. 6–9.  First, the class certification order cited to "declarations from 44 class members who have experienced the discrimination alleged herein." *Harris*, 329 F.R.D. at 624 & n.3.  These included nine declarations from plaintiffs with color-vision deficiencies, and at least one declaration from a plaintiff who faced employment restrictions because he failed color-vision tests during FRA recertification.  *See* PUF Resp. ¶ 87; Pl. Ex. 49, ECF No. 49-11.  Second, notice of the class certification order was sent everyone on a list of "7,723 current and former [Union Pacific] employees" that Union Pacific produced during discovery.  *Harris*, 329 F.R.D. at 627.  Zaragoza himself was included in this list.  PUF Resp. ¶ 71

But these observations do not establish that Zaragoza was a member of the certified class. First, the district court in *Harris* only mentioned the forty-four declarations in one sentence while considering the adequacy of the class representatives and their counsel.  *See* 329 F.R.D. at 624. "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)) (alteration in *Deepwater*).  In context, then, the *Harris* court appears to use the forty-four declarations merely to show that the class representatives had no conflicts of interest with the putative class members.  *See* 329 F.R.D. at 624 ("Plaintiffs have declarations from 44 class members who have experienced the discrimination alleged herein.  There is no indication . . . that plaintiffs' interests are divergent or opposed.").  Tellingly, the *Harris* court did not discuss the declarations when considering the commonality or typicality of the class representatives' claims.  *See generally id.* at 623–24.  And

---

excluded others.  And because Zaragoza's FFD examination did not result from a reportable health event, the *Harris* class excluded him.

in any case, the *Harris* court never expressly considered or stated whether the declarants fell within the certified class. *See generally id.* at 624. To be sure, the *Harris* court's description of the declarants as "class members" appears to imply that the declarants were members of the certified class when read in isolation. *See id.* at 624. But this implication conflicts with the plain terms of the class definition. It would be absurd to read the court's passing reference to the declarations as tacitly expanding the class beyond the explicit definition adopted later in the same order. *Cf. Donahue v. Union Pac. R.R. Co.*, No. 21-cv-448-MMC, 2022 WL 4292963, at *5 (N.D. Cal. Sept. 16, 2022) (finding that one of the forty-four declarants cited in the certification order was not a member of the *Harris* certified class).

Further, while the *Harris* court did rely on Union Pacific's list of 7,723 employees to provide notice to potential class members, Union Pacific consistently denied that the list accurately represented the size and scope of the class. *See* Def. Ex. SS, at 2, ECF No. 54-2 ("[W]e believe the list is over-inclusive even under the class definition we have been operating under.").[6] Nor did the court's use of Union Pacific's list represent a finding that all employees on the list were class members. In fact, the notice sent to the employees on the list stated only that the suit "*may* affect your rights," while repeating the class definition used in the district court's order. *See* Pl. Ex. 97, at 2, *Harris v. Union Pac. R.R. Co.*, No. 8:16-cv-381-JFB-SMB

---

[6] This fact also defeats Zaragoza's estoppel arguments. *See* Resp. 4–6. Judicial estoppel applies only when "a party's later position [is] 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (collecting cases). But Union Pacific never represented—let alone clearly indicated—that plaintiffs like Zaragoza were members of the *Harris* class during its litigation of that case. *See* Def. Ex. SS, at 2; Pl. Ex. 32, at 5–6 & nn.1–3, ECF No. 49-5. Accordingly, Union Pacific is not estopped from denying Zaragoza's membership in the *Harris* class at this stage. *See Owen v. Union Pac. R.R. Co.*, No. 8:19-cv-462, 2020 WL 6684504, at *5 n.2 (D. Neb. Nov. 12, 2020) (rejecting similar estoppel and reliance arguments).

(D. Neb. Aug. 17, 2018), ECF No. 248-35 (emphasis added).[7] Far from evincing that each recipient was included in the certified class, the notice informed plaintiffs like Zaragoza that they were excluded from it.

Finding Zaragoza was not a member of the *Harris* class is consistent with other courts' treatment of similarly situated plaintiffs. At least three district courts have addressed the same question presented here: whether a Union Pacific employee who failed their color-vision testing during the FRA recertification process was included in the *Harris* court's certified class. *See DeFries v. Union Pac. R.R. Co.*, No. 3:21-cv-205-SB, slip op. at 9 (D. Or. Nov. 23, 2022), ECF No. 64 (Magistrate's Findings & Recommendation), *adopted*, 2023 WL 1777635 (D. Or. Feb. 6, 2023); *Donahue*, 2022 WL 4292963, at *3–4; *Blankinship v. Union Pac. R.R. Co.*, No. CV-21-72-TUC-RM, 2022 WL 4079425, at *4 (D. Ariz. Sept. 6, 2022). In each case, the court granted summary judgment for Union Pacific, finding that the employees were excluded from the *Harris* class because they did not receive an FFD examination as a result of a reportable health event. *See DeFries*, 2023 WL 1777635, at *3; *Donahue*, 2022 WL 4292963, at *4–5; *Blankinship*, 2022 WL 4079425, at *5–6.

Zaragoza cites two district court opinions that initially appear to adopt a more expansive definition of the *Harris* class. *See* Resp. 15–16 (first citing *Munoz v. Union Pac. R.R. Co.*, No. 2:21-cv-186-SU, 2021 WL 3622074, at *2 (D. Or. Aug. 16, 2021); and then *Campbell v. Union Pac. R.R. Co.*, No. 4:18-cv-522-BLW, 2021 WL 1341037, at *5 (D. Idaho Apr. 9, 2021)). But in each of these cases, a Union Pacific supervisor referred the plaintiff for an FFD examination based on their observations about the plaintiff's condition. *See Munoz v. Union*

---

[7] While the parties did not include this document in the summary judgment record, the Court may take judicial notice of the existence of filings in other court proceedings. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829–30 (5th Cir. 1998) (collecting cases).

*Pac. R.R. Co.*, No. 2:21-cv-186-HL, 2022 WL 4348605, at *2 (D. Or. Aug. 9, 2022); *Campbell*, 2021 WL 1341037, at *5.  These observations uncovered a reportable health event—either real or perceived—that gave rise to the FFD examination, putting the *Campbell* and *Munoz* plaintiffs squarely within the *Harris* class.  *See Campbell*, 2021 WL 1341037, at *5; Pl. Ex. 54, at ¶ 18. But as discussed, no supervisor referred Zaragoza for an FFD examination; he merely underwent his regularly scheduled color-vision re-testing because federal regulations required him to do so. *See* PUF Resp. ¶ 47.  Thus, the very reasons that put the *Campbell* and *Munoz* plaintiffs within the certified *Harris* class exclude Zaragoza from it.  *See DeFries*, 2023 WL 1777635, at *2 (distinguishing *Campbell* and *Munoz* on similar grounds).

In short, Zaragoza was not a member of the certified class in *Harris*.  The tolling of Zaragoza's limitations period, therefore, stopped on February 5, 2019, when the district court issued its class certification order.  More than three hundred days elapsed between that date and Zaragoza's filing of a discrimination charge with the EEOC, making his filing untimely.  As a result, Zaragoza failed to timely exhaust his administrative remedies, and his case cannot proceed.[8]  *See Melgar*, 931 F.3d at 378–79.

### III.   CONCLUSION

For the foregoing reasons, Union Pacific's Motion, ECF No. 43, is **GRANTED**.

---

[8] Because it resolves Union Pacific's Motion on timeliness grounds, the Court does not consider Union Pacific's other arguments about preclusion under the Federal Railroad Safety Act or the merits of Zaragoza's ADA claims.  *See* Mot. 8–21.

**SO ORDERED.**

SIGNED this 17th day of February, 2023.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE