IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| Robert Anthony Zaragoza,<br><br>      Plaintiff,<br><br>v.<br><br>Union Pacific Railroad Company,<br><br>      Defendant. | Civil Action No. 3:21-CV-00287-KC<br><br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

Page

I.    ARGUMENT .................................................................................................... 2

   A.   Summary Judgment Standard ............................................................. 2

   B.   The FRSA Does Not Preclude or Preempt Zaragoza's Claims Under the ADA ............... 2

   C.   Fact Issues Preclude Summary Judgment on Zaragoza's Discrimination Claims ............. 5

      1) Zaragoza Presents Direct Evidence of Disability Discrimination ................................. 6

      2) Zaragoza is a Qualified Individual with a Disability Under the ADA ........................ 11

      3) Union Pacific's Light Cannon Test is Not a Valid Qualification Standard .................. 13

   D.   Zaragoza's Regarded as Claim Sustains a Disparate Impact Cause of Action ................ 18

   E.   Union Pacific Acted with Reckless Indifference to Zaragoza's Rights ........................... 20

I.    CONCLUSION ................................................................................................ 21

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

## TABLE OF AUTHORITIES

Page

**Cases**

*Albertson's, Inc. v. Kirkinburg,*
  527 U.S. 555 (1999) ................................................................................................ 17, 18, 20

*Atkins v. Salazar,*
  677 F.3d 667 (5th Cir. 2011) ................................................................................... 20

*Baker v. Union Pac. R.R. Co.,*
  580 F. Supp. 3d 647 (D. Neb. 2022) ........................................................................ 7

*Belk v. Southwestern Bell Telephone Co.,*
  194 F.3d 946 (8th Cir. 1999) ................................................................................... 14

Bey v. City of New York,
  999 F.3d 157 (2nd Cir. 2021) .................................................................................. 17

*Blankinship v. Union Pac. R.R. Co.,*
  2024 U.S. Dist. LEXIS 230289, 2024 WL 5187689 (D. Az. Dec. 19, 2024) .......................... 18

*Brasier v. Union Pac. R.R. Co.,*
  2023 WL 129534 (D. Ariz. Jan. 9, 2023) ................................................................. 7

*Brown v. MCI WorldCom Network Servs. Inc.,*
  277 F.3d 1166 (9th Cir. 2002) ................................................................................. 5

Brunskill v. Kansas City Southern Railway Co.,
  2008 WL 413281 (W.D. Mo. Feb. 12, 2008) ............................................................. 15

*Campbell v. Union Pac. R.R. Co.,*
  2020 WL 5300734 (D. Idaho Sept. 4, 2020) ............................................................. 7

*Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.,*
  439 F.3d 894 (8th Cir. 2006) ................................................................................... 12

*Cicalese v. Univ. of Texas Med. Branch,*
  924 F.3d 762 (5th Cir. 2019) ................................................................................... 9

*Clark v. Champion Nat'l Security, Inc.,*
  952 F.3d 570 (5th Cir. 2020) ................................................................................... 9

*David v. Caterpillar, Inc.,*
  185 F.Supp.2d 918 (C.D. Ill. 2002) ........................................................................ 20

*DeFries v. Union Pac. R.R. Co.,*
  2025 U.S. Dist. LEXIS 65696, 2025 WL 1029283 (D. Or. Mar. 7, 2025) .............. 4, 12, 13, 18

*Earwood v. Norfolk S. Ry. Co.,*
  845 F. Supp. 880 (N.D. Ga. 1993) .......................................................................... 4

*EEOC v. BNSF Ry. Co.,*
  902 F.3d 916 (9th Cir. 2018) ................................................................................... 12

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

*EEOC v. UPS*,
    306 F.3d 794 (9th Cir. 2002) ................................................................................ 19

*Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*,
    778 F.3d 473 (5th Cir. 2015), revised Feb. 3, 2015 ......................................... 6, 8

*Fabela v. Socorro Indep. Sch. Dist.*,
    329 F.3d 409 (5th Cir. 2003) .................................................................................. 6

*Fair Hous. Ctr. Of Wash. V. Breier-Scheetz Props, LLC,*
    742 Fed.Appx 116 (9th Cir. 2018) ...................................................................... 20

*Fulbright v. Union Pac. R.R. Co.*,
    3:20-CV-2392-BK, 2022 WL 975603 (N.D. Tex. Mar. 31, 2022) .................... 7, 10

*Gonzalez v. City of New Braunfels*,
    176 F.3d 834 (5th Cir. 1999) ............................................................................... 11

*Hamilton v. Ortho Clinical Diagnostics*,
    2014 WL 2968497 (E.D. Ark. July 2, 2014) ......................................................... 7

*J.E.M. Ag. Supply Inc. v. Pioneer Hi-Bred Int'l, Inc*.,
    534 U.S. 124 (2001) ................................................................................................ 4

*Jones v. Robinson Prop. Grp., L.P.*,
    427 F.3d 987 (5th Cir. 2005) .................................................................................. 6

*Kitchen v. BASF*,
    952 F.3d 247 (5th Cir 2020) ................................................................................... 9

*Kolstad v. ADA* 527 U.S. 526, 119 S.Ct. 2118 (1999) ............................................. 20

*Littlefield v. State ex rel. Dep't of Pub. Safety¸*
    195 F.Supp. 3d 1147, 1154 (D.Nev. 2016) .................................................... 12, 19

*Mills v. Union Pac. R.R. Co.,*
    2024 U.S. Dist. LEXIS 9036, 2024 WL 185246 (D. Id. Jan 16, 2024) ............... 18

*Morton v. Mancari*,
    417 U.S. 535 (1974) ................................................................................................ 4

*Nall v. BNSF Ry. Co.,*
    917 F.3d 335 (5th Cir. 2019) ............................................................................. 6, 9

*POM Wonderful LLC v. Coca-Cola Co.,*
    573 U.S. 102 (2014) ............................................................................................ 4, 5

*Portis v. First Nat. Bank of New Albany, Miss.*,
    34 F.3d 325 (5th Cir. 1994), amended Nov. 10, 1994 ........................................... 9

*Rachid v. Jack in the Box, Inc.,*
    376 F.3d 305 (5th Cir. 2004) .................................................................................. 6

*Rizzo v. Children's World Learning Centers, Inc.,*
    84 F.3d 758 (5th Cir. 1996) ............................................................................. 6, 10

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

*Rodriguez v. ConAgra Grocery Prod. Co.,*
   436 F.3d 468 (5th Cir. 2006) ........................................................................ 9, 10

*Sanders v. Union Pac. R.R. Co,*
   2021 WL 4783629 (D. Neb. Oct. 7, 2021) ............................................................ 7

*Sandstad v. CB Richard Ellis, Inc.,*
   309 F.3d 893 (5th Cir. 2002) ............................................................................. 2

*Syntek Semiconductor Co. v. Microchip Tech. Inc.,*
   307 F.3d 775 (9th Cir. 2002) ............................................................................. 5

*Trans World Airlines, Inc. v. Thurston,*
   469 U.S. 111 (1985) ............................................................................................ 6

*Tufariello v. Long Island R.R.,*
   458 F.3d 80 (2d Cir. 2006) ............................................................................. 3, 4

*Turner v. BNSF Railway Co.,*
   Fifth Cir. Case No. 24-10031 ............................................................................ 5

*United States v. General Dynamics Corp.,*
   828 F.2d 1356 (9th Cir. 1987) ........................................................................... 5

*Vann-Foreman v. Illinois Cent. R.R. Co.,*
   2022 U.S. Dist. LEXIS 10485 *11, 2022 WL 180749 (N.D. Ill. Jan. 20, 2022)........................ 3

*Walker v. Union Pac. R.R. Co.,*
   2023 U.S. Dist. LEXIS 236179 at *28, 2023 WL 10354310 (D. Or. Dec. 18, 2023) .............. 18

Weeks v. Union Pacific R.R. Co.,
   2017 U.S. Dist. LEXIS 68441 (E.D. CA. May 3, 2017)........................................... 3, 5


**Statutes**
49 C.F.R. 240 ..................................................................................... *passim*
49 C.F.R. 242 ..................................................................................... *passim*
49 U.S.C. § 20101 ...................................................................................... 3
Fed. Civ. R. Proc. 56 .................................................................................. 2

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Robert Anthony Zaragoza worked as a conductor for Union Pacific for nearly ten years without ever missing a signal or operating unsafely. However, he lost his job because Union Pacific believed that his congenital color vision deficiency[1] permanently disabled him from working in his conductor position. Since he had proven time and again that he could distinguish actual signals in the field, Union Pacific's entire basis for this conclusion was that he failed Union Pacific's homemade color vision test, the so-called Light Canon test, which their own expert admitted was invalid. These straightforward facts have all the makings of an actionable disability claim under the Americans with Disabilities Act (ADA). Plaintiff was able to perform his job with or without an accommodation as he proved time and again, yet he was taken out of work because his employer perceived that he had a disability – color vision deficiency.

To avoid these compelling and central facts, Union Pacific puts forth a series of arguments to avoid a trial on the merits of their invalid test, each of which fails given the facts in the record. First, Union Pacific attempts to create legal immunity for itself in this (and arguably any) discrimination claim. It contends that, since Union Pacific is regulated by the Federal Railway Administration (FRA) and governed in part by the Federal Railway Safety Act (FRSA), those regulations preclude liability under the ADA for taking someone out of work on the basis of a perceived disability, even when it bases its decision on its own admittedly invalid test. This argument takes many forms – preemption, preclusion, primary jurisdiction – but finds no support in the language of either the FRSA or the ADA.

Union Pacific then attempts to twist the simple elements of the ADA into a legal pretzel, suggesting that Plaintiff needs to show that Union Pacific's reliance on its own invalid test was a

---

[1] Color vision deficiency does not mean color blind. PSSF ¶¶ 3-4. Color vision deficiency ranges from very mild to severe, with "one out of 12 men and one out of 220 women in the United States [having] some form of congenital red-green color deficiency." *Id.*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

pretext for discrimination in order to prevail. For this and related arguments, Union Pacific attempts to take us back in time by resurrecting cases and concepts from that time prior to the amendments to the ADA-the ADAAA. These efforts simply confuse the straightforward facts here. Plaintiff will demonstrate that the ADA's application to his case is simple: he was capable of performing his job – his record clearly demonstrates as much – Union Pacific decided he was disabled and took him out of work as a result – its own paperwork says so – and the so-called justification for that decision, the Light Cannon test, is admittedly invalid and unreliable. Failing the Light Cannon test does nothing to prove that Plaintiff's continued employment was a threat. Plaintiff's case creates clear fact issues for a jury to decide, and summary judgment should be denied.

## I.      ARGUMENT

### A.  Summary Judgment Standard.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court "must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. In so doing, [the Court] must disregard all evidence favorable to the moving party that the jury is not required to believe." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citations omitted).

### B.  The FRSA Does Not Preclude or Preempt Zaragoza's Claims Under the ADA.

Union Pacific's arguments regarding preemption, preclusion, and primary jurisdiction fail. First, the preemption doctrine does not apply to competing federal statutes. Union Pacific relies on *Weeks v. Union Pacific R.R. Co.,* which concerns preemption of state law – specifically

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

California's Fair Employment and Housing Act – and does not address conflicts of law between federal statutes. No. 1:130CV-1641 SWI JLT, 2017 U.S. Dist. LEXIS 68441 (E.D. CA. May 3, 2017); *See* ECF No. 73, at 10. Indeed, the court there explained "the FRSA does not 'preempt' the ADA because the preemption doctrine 'is inapplicable to a potential conflict between two federal statutes.'" *Id.* *24, n.6, *citing Tufariello v. Long Island R.R.*, 458 F.3d 80, 85 (2d Cir. 2006). Further, while the FRSA has an express preemption clause, that clause applies only to state law. *Id.* *20, 24 n.6.[2]

Second, the FRSA does not indicate any clear congressional intent to preclude ADA claims. Instead, the two statutes have different purposes that can exist harmoniously – as Union Pacific admits, the FRSA is a railroad safety statute, while the ADA protects against disability discrimination. ECF 73 at 9-10; *see* 49 U.S.C. § 20101; *Vann-Foreman v. Illinois Cent. R.R. Co.*, Case No. 19 C 8069, 2022 U.S. Dist. LEXIS 10485 *11, 2022 WL 180749 (N.D. Ill. Jan. 20, 2022) ("The subject matter of Title VII is discrimination. It is not a safety statutes. Thus Title VII and the FRSA address different subject matters entirely. Consequently, the court concludes that the FRSA does not preempt Title VII and plaintiff was not requires to exhaust any available remedies under the FRSA") (citation omitted); *Weeks,* 2017 U.S. Dist. 68441 ("Further, the subject matter of the FEHA and the ADA is discrimination. As relevant here, the subject matter of the FRSA and 49 C.F.R. Part 240 is the criteria for ensuring that safe a qualified individuals operate locomotives. The ADA And FEHA are not safety statutes of regulations. The FRSA and the ADA/FEHA address different subject matters entirely") (citations omitted); *Earwood V. Norfolk S. Ry. Co.,* 845

---

[2] Likewise, as Union Pacific admits, the *Weeks* court determined that, despite the existence of a preemption clause, the plaintiff's state law claims were not preempted by the FRSA. Union Pacific's inferred implications as to how the *Weeks* Court would have ruled if the plaintiff there had challenged his FRA recertification is a non-starter.

3

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

F. Supp. 880, 885 (N.D. Ga. 1993) ("The Court concludes that Plaintiff's FELA claims are not precluded by F.R.S.A. The two statutes do not purport to cover the same areas. . . . There is clearly no 'intolerable conflict' between the two statutes.') Further, the FRSA's certification appeal process does not "substantially subsume" the subject matter of this case. *See Tufariello*, 458 F.3d at 86 (rejecting argument that FELA hearing loss case was precluded by the FRSA's minimum standards for sound levels in train warning devices because the FRSA does not address when employee must be provided hearing protection).

Under the Supreme Court's unanimous decision in *POM Wonderful LLC v. Coca-Cola Co.,* , two statutes are complementary when the "impose 'different requirements and protections'" and "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal status to preclude the operation of the other. 573 U.S. 102 (2014) (quoting *J.E.M. Ag. Supply Inc. v. Pioneer Hi-Bred Int'l, Inc*., 534 U.S. 124, 144 (2001)). Plaintiff's claims are not a challenge to the FRSA itself, but, rather, concern the company's FFD decision to permanently remove him from service based on his perceived disability. To determine that Plaintiff's discrimination claim is precluded by a complimentary safety statute would amount to a complete disregard for congressional intent. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."); *DeFries v. Union Pac. R.R. Co.*, Case No. 3:21-cv-205-SI, 2025 U.S. Dist. LEXIS 65696 at *22-25, 2025 WL 1029283 (D. Or. Mar. 7, 2025) (Related case concerning the Light Cannon test, holding that the ADA is not precluded by the FRSA).

Union Pacific's reliance on *Turner v. BNSF Railway Co.* is also imprudent. There, the court

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

entirely failed to apply controlling Supreme Court law in *POM Wonderful* concerning complementary federal statutes, and instead relied on state law FRSA preemption cases such as *Weeks*. No. 4:23-cv-00681-P, 2023 U.S. Dist. LEXIS 231295 *6-7, 2023 WL 9052248 (N.D. Tex. Dec. 22, 2023). Additionally, the *Turner* court failed to acknowledge that the review process established under 49 C.F.R. 240 is a limited three-level resolution mechanism in which the person denied certification *may* obtain a fresh determination by the FRA. *See* 49 C.F.R. §§ 240.401-240.411. The statute does not establish an exhaustion requirement. The *Turner* decision is currently on appeal to address these issues. Fifth Cir. No. 24-10031.

Finally, dismissal under the Primary Jurisdiction doctrine is equally inappropriate. Primary Jurisdiction does not require that all claims within an agency's purview be decided by the agency, nor is it intended to "'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Brown v. MCI WorldCom Network Servs. Inc.,* 277 F.3d 1166, 1172 (9th Cir. 2002); *quoting United States v. General Dynamics Corp.*, 828 F.2d 1356, 1365 (9th Cir. 1987). Primary jurisdiction is discretionary and properly invoked only "when a case presents a far-reaching question that 'requires expertise or uniformity of administration." *Brown,* 277 F.3d at 1172 (Finding that primary jurisdiction was not implicated simply because the case involved a question over which the FCC could have jurisdiction); *General Dynamics*, 828 F.2d at 1365. Despite Union Pacific's insistence that the FRA provides an alternative remedy, the doctrine is not equivalent to the requirement of exhaustion of administrative remedies. *Syntek Semiconductor Co. v. Microchip Tech. Inc.,* 307 F.3d 775, 780-81 (9th Cir. 2002).

**C. Fact Issues Preclude Summary Judgment on Zaragoza's Discrimination Claims.**

The Americans with Disabilities Act ("ADA") prohibits employers from "discriminat[ing]

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

against a qualified individual on the basis of disability in regard to [] discharge of employees, [and] other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). This includes a prohibition on "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability[.]" 42 U.S.C. § 12112(b)(6).[3] Qualification standards include "medical, safety and other requirements established by [an employer] as requirements [] to be eligible for the position held[.]" 29 C.F.R. § 1630.2(q).

### 1) Zaragoza Presents Direct Evidence of Disability Discrimination.

In an employment claim, "direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003), *see also Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475–76 (5th Cir. 2015), as revised (Feb. 3, 2015); *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004). When an employee presents direct evidence of discrimination, the *McDonnel-Douglas* framework is not applicable. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 621–22 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."); *Nall v. BNSF Ry. Co.* 917 F.3d 335, 341 (5th Cir. 2019); *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 762 (5th Cir. 1996). As a result, the plaintiff need not show the defendant's stated rationale is pretextual. *Rizzo,* 84 F.3d at 762.

Here, Zaragoza presents direct evidence of discrimination. Union Pacific removed

---

[3] Such claims can be both disparate treatment claims and disparate impact claims. *See EEOC v. Dolgencorp, LLC,* 2022 WL 2959569, at *8 (N.D. Ala. July 26, 2022); 42 U.S.C. § 12112(b)(6) (prohibiting "using qualifications standards [] that <u>screen out or tend to screen out</u> an individual with a disability[.]") (emphasis added); *Raytheon Co. v. Hernandez,* 540 U.S. 44, 53 (2003) ((b)(6) claims include disparate treatment)..

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Zaragoza from service because of a perceived color vision deficiency, and then relied on that belief to impose standard work restrictions that resulted in the loss of his job. PSSF ¶¶ 49, 53-54. Specifically, in the assessment portion of his memo establishing work restrictions for Plaintiff, Dr. John Holland stated that "Mr. Zaragoza has evidence of a color vision deficit." PSSF ¶ 49. Dr. Holland then later confirmed that Plaintiff was removed from service because of a "permanent hereditary color vision deficiency," and issued him permanent work restrictions on that basis in his October 2016 memo. PSSF ¶¶ 53-54. This is a direct admission by Defendant's Chief Medical Officer that Plaintiff's perceived disability was the reason for Defendant's adverse action.

Multiple courts agree that this is direct evidence of discrimination. *Fulbright v. Union Pac. R.R. Co.*, 3:20-CV-2392-BK, 2022 WL 975603, at *19-20 (N.D. Tex. Mar. 31, 2022) (employment actions taken because of an employee's medical status show "direct evidence of discrimination"); *Baker v. Union Pac. R.R. Co.* 580 F. Supp. 3d 647, 659 (D. Neb. 2022) ("There is direct evidence of discrimination because the defendant admittedly made the decision to remove him from work" based on his disability"); *Sanders v. Union Pac. R.R. Co*, 2021 WL 4783629, at *8 (D. Neb. Oct. 7, 2021) ("The record show's there is direct evidence of discrimination[.]"); *Campbell v. Union Pac. R.R. Co.*, 2020 WL 5300734, at *4 (D. Idaho Sept. 4, 2020) ("There is no material dispute that Union Pacific removed Campbell from the Trainman position because of his disability."); *see also Brasier v. Union Pac. R.R. Co.*, 2023 WL 129534, at *3 n.3 (D. Ariz. Jan. 9, 2023) (removal of employee based on Defendant's FFD Program is presumptively direct evidence of disability discrimination); *Hamilton v. Ortho Clinical Diagnostics*, 2014 WL 2968497, *5–6 (E.D. Ark. July 2, 2014) (evidence of a memorandum explaining that the reason for employee's termination was his lifting restrictions constituted direct evidence of disability discrimination.)

This interpretation is also consistent with the Fifth Circuit's direct evidence standard. *See*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

*Etienne,* 778 F.3d at 475–76. Under Fifth Circuit precedent, workplace comments constitute direct evidence if they are (1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision. *See id.* The evidence here undeniably satisfies these factors.

First, multiple statements by CMO Dr. Holland during Union Pacific's Fitness-for-Duty evaluation of Zaragoza were directly "related to" Zaragoza's protected characteristic. Dr. Holland's June 27 and October 11 memos explicitly state that "evidence of a color vision deficit" was the basis for Zaragoza's removal from service. PSSF ¶¶ 49, 53-54. Indeed, after Dr. Holland referred Plaintiff for further testing with Dr. Shechter, he determined that, despite Plaintiff's passage of the Farnsworth D-15 test, the results did not provide adequate evidence of "normal color vision." PSSF ¶ 53. Crucially, Dr. Holland did not merely state that Plaintiff had fallen short of FRA requirements or that Plaintiff was unable to discriminate signal colors, but rather that it is his hereditary color vision deficiency that disqualified him from working. PSSF ¶¶ 49, 53-54. Second, the statements by Dr. Holland occurred close to the time of the adverse action. Indeed, Dr. Holland made these statements as a part of the Union Pacific FFD process under which Plaintiff was removed from service. DSSF ¶¶ 59-60, 64-66, PSSF ¶¶ 49-54. Third, Dr. Holland had the authority to make the FFD assessment and issued both the Notice of Pending Denial of FRA Certification and the ultimate denial itself. DSSF ¶¶ 59-60, 66. Fourth, the statements were related to the challenged adverse action. Dr. Holland's statements about Plaintiff's protected characteristic were part and parcel of the FFD determination and were made in furtherance of Union Pacific's process that resulting in the loss of Plaintiff's job.

Ignoring these factors, Union Pacific urges the Court to adopt a heightened direct evidence

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

standard—one that not only requires proof that an improper criterion was a basis for the adverse decision, but also that the bad actor harbored "animus" towards the plaintiff. ECF No. 73, at 16-17. Fifth Circuit precedent makes clear that direct evidence does not require animus directed at the employee or ill-will directed at other people with the protected characteristic. *Rodriguez v. ConAgra Grocery Prod. Co.,* 436 F.3d 468, 480 (5th Cir. 2006). Rather, evidence that the protected characteristic played a role in the adverse decision is sufficient to demonstrate direct evidence. *Id.* (reversing summary judgment decision and granting partial summary judgment for the plaintiff because the employer's admission that plaintiff did not get the job "because of his uncontrolled diabetes" was direct evidence of discrimination and sufficient to establish liability); *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994), *as amended on denial of reh'g* (Nov. 10, 1994) (finding manager's disparaging comments about the plaintiff's gender were direct evidence sufficient to deny summary judgment without requiring additional evidence that the manager harbored ill-will towards other women.) Indeed, where a plaintiff presents direct evidence of discrimination, that amounts to proof of a discriminatory motive. *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

None of Union Pacific's cited cases warrant a different result. For example, in *Kitchen v. BASF*, 952 F.3d 247 (5th Cir 2020), the plaintiff was terminated for being intoxicated at work. There, the Fifth Circuit held that terminating someone for "arriving to work under the influence of alcohol is not equivalent to firing Kitchen because of a prejudice against alcoholics." 952 F.3d at 252. Similarly, in *Clark v. Champion Nat'l Security, Inc.,* 952 F.3d 570 (5th Cir. 2020), the plaintiff was terminated after falling asleep at his desk, and the comments the plaintiff relied upon as direct evidence made no reference to his alleged impairment (diabetes). 952 F.3d at 581-82; *see also Nall v. BNSF Ry. Co.,* 917 F.3d 335, 338 (5th Cir. 2019) (finding no direct evidence where statements

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

by employer did not show the irreversible nature of plaintiff's condition "was the reason why Nall would not be returning to work.")

Here, Dr. Holland explicitly referenced and relied on Zaragoza's perceived impairment – color vision deficiency – as the reason for his removal from service and the imposed work restrictions. PSSF ¶¶ 49, 53-54, DSSF ¶¶ 59-60, 64-66. As a result, this case is easily distinguishable from *Kitchen* and *Clark*, and instead, is more akin to the Fifth Circuit's decision in *Rodriguez*. There, the Fifth Circuit *granted* summary judgment in the plaintiff's favor because the employer's statement that the plaintiff was not hired because of his diabetes was direct evidence of disability discrimination. *Rodriguez*, 436 F.3d at 480; *see also Rizzo,* 84 F.3d at 762 (reversing summary judgment order because there was direct evidence that the plaintiff "was removed from driving duties because of her hearing impairment[,]" and fact issues existed on the direct threat defense.)

For these reasons, Union Pacific's attempt to inject the *McDonnell-Douglas* framework into this claim is error. Zaragoza presents direct evidence of discrimination and summary judgment is properly denied. *Fulbright,* 2022 WL 975603, at 24-25.

Even under a pretext analysis, however, Union Pacific's argument still fails. Zaragoza can show Union Pacific's stated rationale is pretext because, in removing him from work, it relied on an admittedly invalid test that its own consultant warned them was not ready to be implemented. PSSF ¶¶ 37-44, 49. Indeed, Union Pacific's reliance on a proprietary test that had not been sufficiently evaluated and that, when assessed, had a false failure rate of 26.5% entirely undercuts the argument that Plaintiff was removed because he *could not* be certified under FRA regulation. Union Pacific's decision to issue Plaintiff permanent work restrictions was discretionary and based on Plaintiff's perceived disability, not on FRA requirements.

2) **Zaragoza is a Qualified Individual with a Disability Under the ADA.**

The ADA applies to qualified individuals with disabilities. Union Pacific does not dispute that Plaintiff is disabled or that it regarded him as having a disability within the meaning of the ADA. Rather, Union Pacific disputes that Plaintiff was a qualified individual under the statute. The evidence demonstrates otherwise.

"Qualification" is a two-step inquiry. Plaintiff must show: (1) that he "satisfies the requisite skill, experience, education and other job-related requirements" of the conductor position; and (2) that he can perform the essential functions of such position with or without a reasonable accommodation. *Gonzalez v. City of New Braunfels*, 176 F.3d 834, 837 (5th Cir. 1999). Concerning the first inquiry, Union Pacific does not contest that Plaintiff satisfies the requisite skill, experience, and education to perform his jobs. Indeed, Plaintiff worked nearly 10 years without incident, and a jury could reasonably find that he has the general qualifications. PSSF ¶¶ 45-46.

Union Pacific instead argues that Plaintiff fails to meet a job-related qualification standard – i.e., obtaining FRA certification by passing Union Pacific's unvalidated, proprietary test that was rejected by its own experts. ECF No. 73, at 17; *see* PSSF ¶¶ 24-26, 36-44. Union Pacific's contention that Plaintiff is unqualified because he does not possess the required certification to perform his job fails because Union Pacific itself is the arbiter of whether Plaintiff could be certified. PSSF ¶¶ 1-2, 5, 45-54; DSSF ¶¶ 16-17, 34-38, 53-65. Indeed, the policies that Union Pacific used to deny Plaintiff's certification are the very policies that Plaintiff alleges violate the ADA. *See Bates*, 511 F.3d at 990 ("[I]ndeed, it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly *cannot* meet because of his disability and that forms the very basis of his discrimination challenge.")

As to the "essential function" inquiry, the most obvious evidence that Plaintiff could

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

perform the essential functions of his job with or without a reasonable accommodation is that he performed his job for years without incident. PSSF ¶¶ 45-46; *See Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 901 (8th Cir. 2006) (plaintiff proved he could perform essential functions of driving a forklift because he drove a forklift for defendant); *see also EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 927 (9th Cir. 2018), *as amended* (Sept. 12, 2018). Further, contemporary color vision testing with Dr. Schecter indicated that Plaintiff had the color vision acuity to perform the essential function of his job. PSSF ¶ 51, DSSF ¶¶ 64-65. While Union Pacific may argue that Plaintiff's passage of the Farnsworth D-15 is insufficient to prove his ability to read railroad signals because the test is not included in the FRA list of approved screening tests, the FRA does not prohibit the use of other scientific tests, such as the Farnsworth D-15, for secondary testing purposes. PSSF ¶ 8. Therefore, Union Pacific's argument concerning the Farnsworth D-15 goes to the weight of the evidence, and Plaintiff's passage establishes a triable issue of fact. Indeed, Plaintiff's retained color vision expert, Dr. Jay Neitz, will testify that Plaintiff's color vision acuity is sufficient to perform the essential functions of the job. *See DeFries*, 2025 U.S. Dist. LEXIS 65696 at *41 (holding in related Light Cannon case that evidence of additional color vision testing and medical expert testimony was sufficient to create an issue of fact as to plaintiff's qualification.).

In an attempt to evade the obvious conclusion that Plaintiff can establish his qualification, Union Pacific emphasizes that Plaintiff failed Ishihara tests and that he testified that he experiences some degree of color-vision deficiency. These facts do not undermine Plaintiff's qualification under the ADA because Union Pacific's qualification standards are not part of Plaintiff's prima facie case. *See Littlefield v. Nevada*, 195 F. Supp. 3d 1147, 1159 (D. Nev. 2016) (quoting *Bates*, 511 F.3d at 992–93) (Defendant "asserts a blanket safety-based qualification standard—beyond

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

the essential job function—that is not mandated by law [and] screens out or tends to screen out an individual with a disability.")

Furthermore, the FRA has acknowledged that color-vision deficits can vary significantly and that many individuals who are unable to pass the Ishihara are entirely capable of discriminating colors on railroad wayside signals. PSSF ¶ 2. Plaintiff demonstrated his ability to read actual railroad wayside signals by passing Union Pacific's previous CVFT, which used a wayside signal located on Union Pacific mainline, and by working for nearly 10 years without missing a signal. PSSF ¶ 45-46. Plaintiff also showed time and again that he had the color vision acuity to discriminate the different colored signal lights used on the Union Pacific line, as required by the FRA. 49 C.F.R. Part 242 App'x D; PSSF ¶¶ 1-2; DSSF ¶ 11. These facts are sufficient to show that, absent Union Pacific's discriminatory color-vision qualification standard, Plaintiff would have been able to perform the functions of his job.

**3) Union Pacific's Light Cannon Test is Not a Valid Qualification Standard.**

    i.    <u>Union Pacific's Color Vision Standards Fall Outside of the FRA Standards and Never Underwent a Validation Process.</u>

Union Pacific relies on FRA regulations mandating color-vision testing as a defense for its facially discriminatory color-vision policies. In essence, Union Pacific has taken the position that the existence of the FRA's conductor certification requirements bind its hands and immunizes it from liability when it imposes work restrictions and removes an employee from service even though the FRA regulations mandate no such action. This argument fail on two fronts.

First, although the FRA requires color-vision testing as a part of conductor certification, those regulations do not mandate the company's reliance on the on its own, unvalidated Light Cannon test. PSSF ¶¶ 1-5; *see DeFries*, 2025 U.S. Dist. LEXIS 65696 at *43 (finding that "FRA regulations do not require that Union Pacific *use the Light Cannon* test as a secondary test. Indeed,

13

they do not require that Union Pacific eve use a field test as a secondary test."). The FRA explains that "[t]here are many types of eye conditions and visual disturbances ranging in severity from very mild to severe and many types and designs of railroad signals and railroad operating rules." 49 C.F.R. § 242.117(h)(3); PSSF ¶ 2. And while it requires that conductors be allowed to undergo additional evaluation upon request if they fail a threshold assessment, the FRA leaves the development of the subsequent testing processes to the railroad, merely stating that such testing should take the form of ophthalmological referral, field testing, or other practical color testing. PSSF ¶¶ 1-5. In other words, Union Pacific's color-vision policies are its own, and the FRA regulations do not serve as a shield to liability under the ADA. *See Bates*, 511 F.3d at 998 (noting that reliance on government-imposed safety standards, while relevant to an employer's defenses, does not serve as a complete bar to a finding of ADA liability.") In addition, while Defendant correctly observes that FRA regulations include a requirement that that railroads determine whether employees have the ability to recognize and distinguish colored railroad signals, it does not authorize the company to create a method that violates the ADA. *See Belk v. Southwestern Bell Telephone Co.*, 194 F.3d 946, 951 (8th Cir. 1999) (employers must "validate the test or exam in question for job-relatedness"). Therefore, Union Pacific's claimed reliance on the FRA regulations is unavailing.

Second, Union Pacific ignores that the company *chose* to change is testing procedures to require passage of the Light Cannon test, a test which it failed to validate per FRA guidelines and which its own expert admits is invalid. While the FRA does not mandate specific testing protocols, it *has* established minimum standards for field and scientific testing. PSSF ¶¶ 5-9. Union Pacific's Light Cannon test fails to meet these minimum requirements. The Light Cannon device is distinct from wayside signals and was designed solely for the purpose of testing Union Pacific employees'

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

color-vision, thus is best considered a form of clinical or scientific test. PSSF ¶¶ 19, 30-33. Given

that, to date, the Light Cannon has never been the subject of rigorous peer reviewed study, the test

falls well short of the FRA's requirements for scientific testing. PSSF ¶¶ 6-7, 25-28, 34-44.

Moreover, even if the Light Cannon qualifies as a field test, the FRA requires that tests be

"valid, reliable, and comparable." PSSF ¶¶ 7-12. According to the FRA, "validity" is "the degree

to which a test actually measures what the test is intended to measure." PSSF ¶ 9. Union Pacific's

own consulting specialists – including its disclosed expert, Dr. Rabin - testified to the importance

of subjecting a color vision test to validation testing. PSSF ¶¶ 16-18. Yet Union Pacific knew that

its Light Cannon test fell short of FRA minimum validation standards even as it rolled the test out

for use in 2016. Internal documents show the company decided to rely on color vision testing

results from the Light Cannon even though the medical experts it hired to review the test

determined it was not ready. PSSF ¶¶ 21-28, 36. The report issued by Dr. Rabin and Dr. Ivan

following their initial evaluation of the Light Cannon stated unequivocally that the test in its then

current form was not ready to be implemented as a device to assess employees color-vision, and

that, in addition to several hardware changes, the test should have undergone further rigorous

validation. PSSF ¶¶ 25-27. Union Pacific ignored these recommendations and began using the

Light Cannon to test employees just four months later, in April 2016, without subjecting it to any

additional validation efforts. PSSF ¶¶ 28-29.[4]

Union Pacific had just rolled out the Light Cannon when Plaintiff was evaluated with it

---

[4] Defendant relies on *Brunskill v. Kansas City Southern Railway Co.* to suggest that the railroad
is entitled to substantial deference in the application of color-vision testing policies. 2008 WL
413281 (W.D. Mo. Feb. 12, 2008). This argument is unavailing, however, because the decision
in *Brunskill* predates the 2015 issuance of the FRA's guidance concerning color-vison tests. *Id.*
There, the FRA had not yet instituted the requirement that color-vision testing be valid, reliable,
and comparable, and as such, the court deferred to the determination of the railroad's chief
medical officer alone. *Id.* at *29.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

2016. Defendant had not completed any validating studies by that time. PSSF ¶¶ 34-44. While it claims that the FRA, via its certification review board, determined that the Light Cannon complies with FRA standards, there is no evidence that the FRA ever completed an evaluation of the test or produced any assessment of its validity. Pl.'s Response to DSSF ¶¶ 43-46; PSSF ¶ 23. Union Pacific argues that decisions by the LERB establish that the Light Cannon was a valid test, however, findings by the review board are "not precedential." 49 C.F.R. §§ 240.409(u)(5), 242.509(u)(5). Moreover, both decisions cited were determined solely on the materials submitted to the Board by the petitioner and the railroad and did not involve an evaluation of the test itself. *See* Docket EQAL-2017-13, at 3; FRA Docket FRA-2017-0049, at 4. In *Marlow* for example, the Light Cannon's validity was not at issue, and the Board merely determined that the test's protocols had been followed correctly. FRA Docket FRA-2017-0049, at 4-5.

It wasn't until 2019 that Dr. Rabin initiated the first study of the Light Cannon test on individuals with normal color-vision. PSSF ¶¶ 37-44. The study determined that the test had a 26.5 percent false fail rate among so called "color-vision normal subjects." PSSF ¶ 39. Dr. Rabin testified that, based on these results, as of 2019, the Light Cannon was not a valid test. PSSF ¶ 44. Because the center piece of Union Pacific's color-vision certification policy – the Light Cannon test – does not comply with FRA regulations for the development and implementation of color-vision tests, the applicable federal regulations do not render Union Pacific's policy job-related, nor do they excuse Union Pacific from liability under the ADA. *See Bates*, 511 F.3d at 993. As such, Union Pacific's suggestion that it removed Plaintiff from service in adherence with federal regulations fails.

ii.    Union Pacific's Reliance on *Alberton's* is Misplaced.

Despite its failure to adhere to FRA standards for scientific and field testing, Union Pacific

claims it enjoys a complete defense under *Albertson's, Inc. v. Kirkinburg*, 55 U.S. 555 (1999). Reliance on *Albertson's*, however, is misplaced as the circumstances there are easily distinguishable from the present case.

To start, unlike the FRA policy here, which grants Union Pacific discretion in developing its color-vison testing policy, *Albertson's* concerned a set of unequivocal Department of Transportation ("DOT") qualification standards for commercial truck drivers. *Id.* at 559. The DOT regulatory scheme required that, to be qualified, a driver must meet the DOT's standards for visual acuity. *Id.* at 570. There, the plaintiff was an employee of defendant Albertsons who was deprived a position as a commercial truck driver based on the defendant's application of the DOT policies. *Id.* at 526-27. The plaintiff did not challenge the validity of the regulations, instead arguing that the employer should have accepted an experimental waiver program that would have allowed the plaintiff to receive DOT certification. *Id.* 575. The Court determined that the waiver program did not modify the DOT's general visual acuity standards and the employer was entitled to rely on the DOT standards as written. *Id.* at 574, 77. Similarly, in *Bey v. City of New York*, employee firefighters argued that they were entitled to an accommodation in their use of personal protective equipment. 999 F.3d 157 (2nd Cir. 2021). There, the court determined that "binding OSHA regulation" concerning the length of facial hair that may be worn with the equipment directly prohibited the requested accommodation. *Id.* at 167. The employer was, therefore, entitled to rely on the OSHA binding standards. *Id.* at 168.

Here, unlike in *Albertson's* and *Bey*, the FRA granted Defendant discretion in developing tests with only minimum standards. Indeed, Defendant itself stresses the degree of discretion afforded it by the FRA. *See* DSSF ¶¶ 17, 28, ECF No. 73 at 8. Defendant cannot have it both ways and claim that it was simultaneously bound by federal regulation and had significant discretion in

the creation of a secondary test. Unsurprisingly, therefore, where Courts in related cases have assessed Defendant's *Albertson's* defense, they have routinely rejected it as entirely inapplicable. *See DeFries*, 2025 U.S. Dist. LEXIS 65696 at *43 (finding that "[t]he *Albertson's* defense . . . turns of whether binding FRA regulations require testing with the Light Cannon," and holding that, because FRA regulations do not require that Union Pacific use its Light Cannon, "the *Albertson's* defense does not apply as a matter of law to shield Union Pacific from challenges to the Light Cannon secondary field test."); *Mills v. Union Pac. R.R. Co.,* 1:22-cv-00143-DCN, 2024 U.S. Dist. LEXIS 9036, 2024 WL 185246 (D. Id. Jan 16, 2024) ("With the discretion afforded by Appendix F, Union Pacific created the Light Cannon . . . In other words, *unlike* Albertson's, Union Pacific has insisted upon a job qualification of its own devising. And because reliance on the Light Cannon is not required by federal regulation, its use may be subject to questions about its appropriateness and justifiable application" to an employee.); *Walker v. Union Pac. R.R. Co.*, 3:22-cv-01011-JR, 2023 U.S. Dist. LEXIS 236179 at *28, 2023 WL 10354310 (D. Or. Dec. 18, 2023) (*Findings and Recommendation adopted by* 3:22-cv-1011-JR 2024 U.S. Dist. LEXIS 42042, 2024 WL 1052678 (D. Or. Mar. 11, 2024)); *Blankinship v. Union Pac. R.R. Co.,* No. CV-21-00072-TUC-RM, 2024 U.S. Dist. LEXIS 230289, 2024 WL 5187689 (D. Az. Dec. 19, 2024) ("The Court further recognizes that Defendant developed the Light Cannon field test in house, and that the test is not specifically mandated by FRA regulations.") (dismissing plaintiff's ADA claims on different grounds). The Light Cannon and the policies around it are Union Pacific's creations and, given that they fall short of the FRA's minimum standards for validity, a jury could determine that it is liable for discriminatory actions taken as a result.

### D. **Zaragoza's Regarded as Claim Sustains a Disparate Impact Cause of Action.**

Union Pacific's argument that Plaintiff is not disabled under the ADA is contrary to the

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

plain language of the statute. The term "disability" is not limited to actual physical or mental impairments, but explicitly includes "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(C); 29 CFR § 1630.2(g) (Definitions). As the statute explains: "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an **actual or perceived** physical or mental impairment whether or not the impairment limits of is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(a) (effective January 1, 2009)(emphasis added) *see Littlefield v. State ex rel. Dep't of Pub. Safety¸*195 F. Supp. 3d 1147, 1154 (D. Nev. 2016) ("'[i]t offends the ADA as much for a person to be 'regarded as' having a disability, as actually to have one. This is because people should not be rejected on account of myths or stereotypes.'") *citing EEOC v. UPS*, 306 F.3d 794 (9th Cir. 2002). This definition of "disability" applies to claims under both 42 U.S.C. § 12112(a) and 42 U.S.C. § 12112(b)(6). 42 U.S.C. § 12102 ("As used in this chapter . . . the term disability means . . ."); *see also* 29 CFR § 1630.2(g).

By contrasting "actual and perceived" impairments, congress intended the law to protect individuals who both were treated as more impaired than they actually are and those who are mistakenly treated as having an impairment. As discussed above, Dr. Holland and Union Pacific perceived Plaintiff as having a "color vision deficit" and issued him permanent work restrictions on that basis. PSSF ¶¶ 49-50, 53-54. Whether Plaintiff considers himself disabled is immaterial – the question is whether Union Pacific perceived him as such and whether its policies had the tendency of screening like him. Based on facts in the record, a jury could reasonably find that the answer to both questions was "yes."

Finally, Union Pacific makes a passing effort to establish its Business Necessity affirmative defense as a matter of law by claiming that its color vision testing policy and the its application of

if Light Cannon test were mandated by the FRA. ECF No. 26-27, *citing Albertsons*, 527 U.S. at 568. As Plaintiff has addressed at length above, the FRA does not require Union Pacific to implement its in-house color vision test and, as Union Pacific itself argues, grants the railroad significant discretion in choosing and implanting a test. Further, Business Necessity is an affirmative defense, for which Union Pacific bears the burden of proof at trial. *See Atkins v. Salazar,* 677 F.3d 667, 681-82 (5th Cir. 2011). Where the moving party has the burden of proof at trial, the burden at summary judgement is even higher, and the movant must show that "no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Union Pacific cannot, and indeed makes no effort to, carry this burden.

**E.  Union Pacific Acted with Reckless Indifference to Zaragoza's Rights**

Last, triable issues of fact exist as to whether Plaintiff is entitled to punitive damages under the ADA. Whether an employer acted with malice or reckless indifference to an employee's federally protected rights is not a question of whether the employer acted with "evil motive" or was aware that it was engaging in discrimination, but rather whether the employer discriminated "in the face of a perceived risk that its actions will violate federal law." *Kolstad v. ADA* 527 U.S. 526, 536, 119 S.Ct. 2118 (1999); *Fair Hous. Ctr. Of Wash. V. Breier-Scheetz Props, LLC,* 742 Fed. Appx 116, 118 (9th Cir. 2018). *David v. Caterpillar, Inc.*, 185 F.Supp.2d 918, 925 (C.D. Ill. 2002). Here, by removing Plaintiffs from service on the basis of perceived color-vision deficit using a test which Union Pacific failed to subject to proper validation studies, Union Pacific knew it was likely acting in violation of the ADA and, therefore, showed reckless indifference to the rights of its employees. *See* PSSF ¶¶ 24-28, 34-44.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

# I.    <u>CONCLUSION</u>

For the above reasons, Union Pacific's motion for summary judgement should be denied.


Date:   May 12, 2025                        HILDEBRAND MCLEOD & NELSON

                                            */s/ Gavin S. Barney*
                                            **Anthony S. Petru*** (CA #91399)
                                            petru@hmnlaw.com
                                            **Gavin Barney*** (OR #163382, CA #321880)
                                            barney@hmnlaw.com
                                            5335 College Avenue, Suite 5A
                                            Oakland, CA 94618
                                            Tel: (510) 451-6732

                                            **James H. Kaster*** (MN #53946)
                                            kaster@nka.com
                                            **Lucas J. Kaster*** (MN #396251)
                                            lkaster@nka.com
                                            NICHOLS KASTER, PLLP
                                            4700 IDS Center
                                            80 South Eighth Street
                                            Minneapolis, Minnesota 55402
                                            Tel: (612) 256-3200

                                            **Attorneys for Plaintiff Robert Anthony Zaragoza**

                                            *Admitted pro hac vice*

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC
RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the date below, the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT was served on the following individuals below via email:

Lara C. de Leon
COSTANGY, BROOKS, SMITH &
PROPHETE LLP
1100 NW Loop 410, Suite 700
San Antonio, TX 78213
Telephone: 512.382.8800
ldeleon@constangy.com

Katherine I. Serrano
COSTANGY, BROOKS, SMITH &
PROPHETE LLP
1250 S. Capital of Texas Hwy
Bldg 3, Suite 400
Austin, TX 78746
Telephone: 512.382.8808
kserrano@constangy.com

*Attorneys for Defendant*
*Union Pacific Railroad Company*

Date:  May 12, 2025                              s/*Gavin S. Barney*
                                                 Gavin S. Barney

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNION PACIFIC RAILROAD COMPANY'S RENEWED MOTION FOR SUMMARY JUDGMENT**